UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JEAN LIN,                                                                                    07-CV-3218 (RJH)

                Plaintiff,

  - against –

METROPOLITAN LIFE INSURANCE
COMPANY,

                Defendant.
------------------------------------------------------------------x

## AFFIDAVIT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STATE OF NEW JERSEY        )
                           ) ss:
COUNTY OF MIDDLESEX        )

REGINA SOLOMON-STOWE, being duly sworn, deposes and says:

      1.    I am a Senior Technical Claims Advisor with MetLife's Life Claims and Investigations Unit in its offices in Iselin, New Jersey. I submit this affidavit in support of Defendant's Motion for Summary Judgment on its Counterclaim as a result of the material misrepresentations made by Mr. Bang Lin ("Decedent") in his application for life insurance Policy No. 204 126 416 ET (the "Policy") issued on August 31, 2004.

      2.    I have worked for MetLife for 10 years in varying positions. Currently, I hold the position of Senior Technical Claims Advisor.

      3.    As a Senior Technical Claims Advisor, I am generally responsible for providing technical claim support to the Claims Unit on complex or contentious death or disability claims on individual life insurance policies. I also examine claims on individual life insurance policies that have been denied due to non-fulfillment of terms or misrepresentations and conduct post-denial correspondence regarding the claims.

4. I evaluated the death claim submitted by Plaintiff to obtain death benefits for the Policy on the life of Decedent. In my position, I have knowledge of the facts set forth within the affidavit, I am competent to testify about these facts if called as a witness and the facts are true to the best of my knowledge and based on MetLife's business records. MetLife personnel made the records or copies produced in the regular course of business, at the time of the act, transaction, occurrence or event recorded therein or within a reasonable time thereafter, and it was the regular course of business to make such records.

5. On or about August 5, 2004, Decedent applied to MetLife for a life insurance policy by answering certain questions contained in a MetLife application form (the "Application"). *See* Exh. A attached hereto, pp. ML LIN 00394-400.

6. Question 21(d) of the Application states, "Has any person proposed for insurance EVER received treatment, attention, or advice from any physician, practitioner or health facility for, or been told by any physician, practitioner or health facility that he/she had," among other liver ailments, "hepatitis?" In response to Question 21(d), the Decedent checked, "No." *See id.,* p. ML LIN 00398.

7. Questions 22(a)-(c) of the Application state, "Has any person proposed for insurance: a) In the past six months, taken any medication or been under observation or treatment? b) Scheduled any: doctor's visits; medical care; or surgery for the next six months? c) During the past five years had any: checkup; health condition; or hospitalization not revealed above?" In response to Questions 22(a)-(c), the Decedent checked, "No." *See id.,* p. ML LIN 00398.

8. Page 10 of the Application provides, just above the signature lines on which the Decedent executed his signature on this part of the Application, the following:

**AGREEMENT/DISCLOSURE**

> I have read this application for life insurance including any amendments and supplements and to the best of my knowledge and belief, all statements are true and complete. I also agree that:
>
> My statements in this application and any amendment(s), paramedical/medical exam and supplement(s) are the basis of any policy issued.
>
> \* \* \*
>
> This application and any: amendment(s); paramedical/medical exam and supplement(s) that become part of the application, will be attached to and become part of the new policy.
>
> Only the Company's President, Secretary or Vice-President may: (a) make or change any contract of insurance; (b) make a binding promise about insurance; or (c) change or waive any term of an application, receipt, or policy.
>
> No information will be deemed to have been given to the Company unless it is stated in this application and its supplement(s), paramedical/medical exam and amendment(s).

*See id.,* p. ML LIN 00400.

9. On or about August 18, 2004, Decedent completed Part II: Paramedical/Medical Exam for the Policy by answering certain questions and submitting to a paramedical examination. *See id.*, pp. ML LIN 00392-393. The paramedical examination included standard testing of urine and blood. *See* Exh. B attached hereto, ML LIN 00340-341.

10. Question 5(d) of Part II: Paramedical/Medical Exam states, "Have you EVER received treatment, attention, or advice from any physician, practitioner or health facility for, or been told by any physician, practitioner or health facility that you had," among other liver ailments, "hepatitis?" *See* Exh. A attached hereto, p. ML LIN 00392.

11. Questions 6 through 8 of Part II: Paramedical/Medical Exam state the following:

> 6. Are you now, or within the last six months, under observation or taking medication or treatment (Including over the counter medications, vitamins, herbal supplements, etc.)?
> 7. Do you have any doctor's visits, medical care, or surgery scheduled?
> 8. Other than the above, during the past five years have you had any
>    a) Checkup; electrocardiogram; chest x-ray or medical test?

3

    b) Illness; injury; or health condition not revealed above; or have been recommended to have any: treatment, hospitalization; surgery; medical test; or medication?

In response to Questions 6 through 8, the Decedent checked, "No." *See id.,* p. ML LIN 00393.

  12. Page 2 of Part II: Paramedical/Medical Exam further provides, just above the line on which the Decedent executed his signature on this part of the Application, the following:

> I have read the answers to questions 2-14 before signing. They have been correctly written, as given by me, and are true and complete to the best of my knowledge and belief. There are no exceptions to any such answers other than as written.

*See id.,* p. ML LIN 00393.

  13. In reliance upon the representations made by the Decedent in the Application and Part II: Paramedical/Medical Exam, on or about August 31, 2004, MetLife issued the Policy as a Select Preferred Nonsmoker policy on the life of Decedent in the amount of one million dollars ($1,000,000). The Policy is a 15-Year Term Plan of Insurance with Disability Waiver of Premium Rider. Plaintiff Jean Lin, the Decedent's wife, was the named owner and beneficiary of the Policy. A copy of the Application, and Part II: Paramedical/Medical Exam containing the statements, representations and answers of the Decedent, and the terms of the Policy, was attached to and made a part of the Policy. *See id.*

  14. As quoted above, in executing the Application and Part II: Paramedical/Medical Exam, the Decedent agreed to having read it and that all statements were true and complete. In addition, the Decedent acknowledged that his statements were the basis of any policy issued and that no insurance would take effect unless: "(a) the condition of health of each person to be insured is the same as stated in the application; and (b) no person to be insured has received any medical advice or treatment from a medical practitioner since the date of the application." *See id.,* p. ML LIN 00400.

15. On November 29, 2005, Decedent allegedly became disabled and commenced a contestable claim for disability waiver of premium benefits. Decedent subsequently died on August 11, 2006, prior to the evaluation and conclusion of our usual inquiries on a contestable disability claim.

16. On or about September 19, 2006, MetLife received an Individual Life Death Claim Form from Plaintiff. Plaintiff sought payment of five hundred thousand dollars ($500,000) under Policy No. 993 001 679 PR-R (the "'99 Policy"), and one million dollars ($1,000,000) under the Policy at issue based upon the death of the Decedent. The Individual Life Death Claim Form states the Insured's date of death is August 11, 2006. MetLife also received a death certificate for the Insured which confirms his date of death is August 11, 2006. *See* Exh. C attached hereto, p. ML LIN 00270-271.

17. The Policy provides, in relevant part, as follows:

**Not Contestable After Two Years**

> Insurance is issued by the Company in reliance on the statements made in the Application for the insurance. … The insurance issued under this Policy will not be contestable after it has been in force during the life of the Insured for two years from the Date of Issue, except for nonpayment of premiums.

*See* Exh. A attached hereto, p. ML LIN 00381.

18. Since the Insured's death occurred before the Policy was in force for two years, MetLife conducted its usual inquiries concerning the truth of the representations made by the Insured in the Application for the Policy.

19. MetLife's investigation revealed that Decedent's representations in response to Questions 21 and 22 of the application for the Policy and Questions 5, 6, 7, and 8 of Part II: Paramedical/Medical Exam for the Policy were materially false with respect to his history of hepatitis B.

20. The investigation further revealed the same material misrepresentations in the application for the '99 Policy, which was issued on June 10, 1999. *See* Exh. D attached hereto, pp. ML LIN 00702-707.

21. Despite the knowledge of the material misrepresentations in the '99 Policy, MetLife paid the five hundred thousand dollar ($500,000) claim as it was made after the contestable period expired. *See* Exh. C attached hereto, p. ML LIN 00271.

22. As part of its usual inquiries, MetLife ordered Decedent's medical records. Upon receipt, MetLife learned that Decedent was seen from September 1998 until December 2005 by Dr. Sam Kam, a gastroenterologist, for treatment, attention and/or advice for his history of hepatitis B. *See* Exh. E attached hereto, pp. ML LIN 00092-155.

23. Most notably, MetLife learned that Decedent likely had a lifelong history of hepatitis B, he received treatment (including but not limited to being prescribed Interferon) for hepatitis B from September 1998 – through the date of the Application/Paramedical in August 2004 – to December 2005, and was diagnosed with chronic hepatitis B on March 27, 2004. Interferon injections were prescribed and taken by Decedent for four months in 1998 through 1999 for a flare up of active E antigen hepatitis B virus. *See id.*

24. After MetLife received Decedent's medical records, the matter was referred to Daniel Zamarripa, M.D., Vice President in the Life Underwriting Division at MetLife, for his opinion regarding the materiality of Decedent's misrepresentations. Dr. Zamarripa's conclusions regarding the materiality of Decedent's misrepresentations are contained in a Contestable Death Claim Memo that was received by MetLife's Claims Department on or about January 23, 2007. *See* Exh. F attached hereto.

25. Upon reviewing MetLife's underwriting guidelines, Dr. Zamarripa stated that, had MetLife known of this information, it would have declined the Policy as issued. Specifically,

Dr. Zamarripa indicated that according to MetLife's underwriting guidelines in effect at the time of the application, MetLife would have issued a policy at a different rating. *See id.; Zamarripa Aff.* ¶ 5, Exh. A.

26. Based on the information received in the medical records and Dr. Zamarripa's conclusion as to their effect on the underwriting, MetLife informed Plaintiff by letter dated February 5, 2007, that MetLife was denying liability on the Policy. *See* Exh. G attached hereto, ML LIN 00029-30.

27. The letter informed Plaintiff that:

> We have learned, in addition to other relevant facts, that your husband was seen by his attending physician on several occasions from September 5, 1998 to August 7, 2004[1] for a condition which is serious from an underwriting standpoint. If your husband had disclosed his treatment for this condition, which was material to our acceptance of the risk, his application would not have been approved as issued.

In addition, the letter enclosed a full premium refund check (which included applicable interest). *See id.*

28. By letter dated May 4, 2007, I wrote to Plaintiff and enclosed a copy of the application for the Policy. In my letter, I referred to some of the specific application questions quoted above and advised Plaintiff that although I thoroughly reviewed this matter, there was no basis for a change in the decision. I explained that the information developed through the medical records supported the decision to void the contract and refund the premiums. *See* Exh. H attached hereto.

29. On or about April 23, 2007, Plaintiff commenced the instant action by serving a Summons and Complaint. The Complaint asserts a cause of action for breach of contract. *See* Exh. I attached hereto.

---

[1] In fact, Decedent continued to see Dr. Kam through December 2005. *See Sherer Aff.,* Exh. H (Exhs. B-F marked at the deposition of Dr. Kam).

7

30. On or about August 14, 2007, MetLife timely served its Amended Answer, Affirmative Defenses and Counterclaim. MetLife's Counterclaim seeks rescission of the Policy based upon Decedent's material misrepresentations in response to Questions 21 and 22 of Part I of the application for the Policy and Questions 5, 6, 7, and 8 of Part II: Paramedical/Medical Exam for the Policy, concerning his failure to disclose his history of hepatitis B. *See Sherer Aff.,* ¶ 4, Exh. A.

WHEREFORE, for all the reasons set forth above, it is respectfully requested that Defendant's motion for summary judgment be granted in its entirety, and the Court dismiss Plaintiff's Complaint with prejudice.

Dated: July 1, 2008                                              /s/ Regina Solomon Stowe