UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

JEAN LIN,                                                    07-CV-3218 (RJH)

          Plaintiff,

    - against –

METROPOLITAN LIFE INSURANCE
COMPANY,

          Defendant.

------------------------------------------------------------------x

## AFFIRMATION IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STATE OF NEW YORK       )
                           ) ss:
COUNTY OF QUEENS      )

TOMASITA L. SHERER, an attorney duly admitted to practice law in the Courts of the

State of New York, hereby affirms that the following statements are true under the penalties of

perjury:

1.      I am an attorney for Defendant, and I make this Affirmation in Support of

Defendant's motion for summary judgment dismissing Plaintiff's claim for breach of contract on

the basis of Mr. Bang Lin's ("Decedent's") material misrepresentations in his application for life

insurance Policy No. 204 126 416 ET (the "Policy") issued on August 31, 2004.

2.      All Affidavits referenced to in the annexed Memorandum of Law in Support of

Defendant's Motion for Summary Judgment are hereby incorporated by reference.

3.      On or about April 23, 2007, Plaintiff commenced the instant action by serving a

Summons and Complaint.  The Complaint asserts a cause of action for breach of contract.  *See*

*Stowe Aff., ¶ 29,* Exh. I.

4.      On or about August 14, 2007, MetLife timely served its Amended Answer, Affirmative Defenses and Counterclaim.  MetLife's Counterclaim seeks rescission of the Policy based upon the Decedent's material misrepresentations in response to Questions 21 and 22 of Part I of the application for the Policy and Questions 5, 6, 7, and 8 of Part II: Paramedical/Medical Exam for the Policy, concerning his failure to disclose his history of hepatitis B.  *See* Exh. A attached hereto.

5.      Plaintiff replied to the counterclaim on or about August 16, 2007.  *See* Exh. B attached hereto.

6.      Subsequent to the filing of MetLife's Answer, all discovery has been conducted, including the exchange of documents, interrogatory requests and answers, and multiple depositions, including expert depositions.  Among the discovery requested, MetLife propounded interrogatories on or about October 26, 2007.  *See* Exh. C attached hereto.

7.      Question 14 of those interrogatories asks Plaintiff directly about Decedent's treatment for hepatitis B as follows:

> 14.     State whether the Decedent was diagnosed with Hepatitis B, received treatment for Hepatitis B, including but not limited to prescription medication treatment and/or was diagnosed with a history of chronic Hepatitis B, and if so set forth:
> (a) when the diagnosis was made and/or when the treatment was given;
> (b) who gave the diagnosis and/or prescribed the medication; and
> (c) whether Decedent was ever told that he cleared Hepatitis from his system.

*See id.* (Defendant's First Set of Interrogatories to Plaintiff).

8.      Plaintiff responded to these interrogatories on or about December 3, 2007. Tellingly, in response to these questions, Plaintiff refuses to answer and instead generally refers to her Rule 26 automatic disclosure.  *See id.* (Plaintiff's Responses to Defendant's First Set of Interrogatories).

9.      Questions 8, 9, and 10 of MetLife's interrogatories ask about other life insurance

policies applied for on the life of Decedent.  *See id.* (Defendant's First Set of Interrogatories to

Plaintiff).  In Plaintiff's responses, Plaintiff admits that other than the MetLife policies, there was

an additional one million dollar ($1,000,000) policy applied for on the life of Decedent in 2004.

*See id.* (Plaintiff's Responses to Defendant's First Set of Interrogatories); *see also* Exh. P

attached hereto.  Plaintiff is suing for breach of contract under that John Hancock Life Insurance

policy as well.  *See* Exh. Q attached hereto.

10.      Depositions in this case have taken place as follows:

| Date | Deponent | Requested by |
|---|---|---|
| 12/14/07 | Regina Solomon Stowe | Plaintiff |
| 12/14/07 | Daniel Zamarripa, M.D. | Plaintiff |
| 01/02/08 | Jean Lin | MetLife |
| 02/19/08 | Sam Kam, M.D. | MetLife |
| 02/19/08 | Judy Huang | Plaintiff |
| 02/22/08 | Dennis Westman | Plaintiff |
| 05/28/08 | David Clain, M.D. | Plaintiff |
| 06/02/08 | Louis Aledort, M.D. | MetLife |

*See* Exhs. D - K attached hereto.

11.      During those depositions, it is uncontradicted that: (1) the Application materially

misrepresented the truth; and (2) had MetLife known the truth, the Policy would not have been

issued as it was.  *See, e.g., Stowe Aff., ¶¶* 26-27, Exhs. G-H.

12.      For example, in Dr. Zamarripa's deposition, he testified:

Q.      What policy would he have been issued?

> A.    With some extra premium, different than select preferred, with extra premium and to clients who have Hepatitis B and shows, according to our guidelines, we can issue policies with Hepatitis B, not at the best rate.
>
> Q.    At which rate would he have gotten it?
>
> A.    He would be around plus fifty debits that, means according our guidelines would be plus 150 percent - - 150 percent mortality. So this is plus fifty debits. That means you pay your premium and pay fifty percent more of the premium.
>
> Q.    It would have been fifty percent more of the normal premium?
>
> A.    Yes.

*See* Exh E attached hereto, p. 85-86.

13.    In Dr. Clain's deposition, he testified with regard to the ongoing treatment that would be necessary for a patient, such as Decedent, as a hepatitis B carrier:

> Q.    When they come back to you after successful treatment every six months, is each six months' visit with you something that you consider treatment?
>
> [Objection]
>
> A.    I've answered this a number of times, and I think this is a purely semantic statement, whether you call it treatment or management. But it's part of the treatment with the patient because you treat a patient who has hepatitis B forever.
>
> Q.    So, the answer is you consider it treatment?
>
> A.    Yes.

*See* Exh J attached hereto, p. 45.  Dr. Clain is a highly experienced hepatologist, a specialist with liver disease, who is currently a Professor of Clinical Medicine at the Albert Einstein College of Medicine.  *See* Exh. N attached hereto (Dr. Clain's *curriculum vitae*).

14.    Dr. Clain also testified that as a hepatitis B carrier, Decedent remained at a greater risk of developing liver cancer than the general public.

> Q.    What is the incidence of liver cancer in the general public?

A.      I don't have a number.

Q.      Approximately.

A.      It's very low.

***

Q.      What is the incidence rate of liver cancer for those who have been successfully treated for hepatitis B without cirrhosis?

A.      It's a few times increased, like three times increased. It varies in different populations, in different places. It isn't the same here and there. It depends on where the study was done, and there aren't that many studies. But there is a severalfold increase in liver cancer. I can refer you – and I refer to that, I think, in one of my comments in the report, is that, if you look at the AASLD Guidelines on the hepatocellular cancer, they actually quote you papers based on their Asian patients who are not cirrhotic, have no activity, either treated or untreated, are inactive, have an increased instance of hepatocellular carcinoma.

*See* Ex. J attached hereto, pp. 90-91; *see also* Ex. M attached hereto, pp. 4-5, and exhibits attached thereto.

15.      When Dr. Aledort was deposed on June 2, 2008, he acknowledged that patients with hepatitis B should continue to be monitored. However, he disagreed with Dr. Clain that the primary purpose for monitoring was testing for liver cancer, and instead would have added that monitoring was also necessary to test for reactivation:

Q.      So you would agree with Dr. Clain, however, you would add that patients should continue to be monitored indefinitely for reactivation as well?

[Objection]

Q.      Is that right?

A.      I want to add that it's not fully accurate that's all.

Q.      Because?

A.      Because he left out measuring, looking for reactivation.

5

> Q.    So then I just want to make sure I understand what you're saying. You're saying that patients in all categories should be monitored for reactivation as well as cancer?

> [Objection]

> A.    Again, I'm just adding. Why would I object to something that's already there if all I'm doing is adding something.

*See* Exh K attached hereto, p. 131-132. Dr. Aledort is a *hema*tologist – not a hepatologist – who does not treat patients with liver disease and has never written about the treatment of liver disease. *See* Exh. O attached hereto (Dr. Aledort's *curriculum vitae*).

15.    During Dr. Aledort's deposition, with regard to the question of increased risk of liver cancer in hepatitis B patients, Dr. Aledort at first testified that there was no increased risk, then later testified that there was a "minor" increased risk, and finally testified that he did not know whether there was an increased risk, as follows:

> Q.    You stated that because his hepatitis B was no longer active, quote, there was no impact on his longevity or survival, correct?

> A.    Correct.

> Q.    Do you still agree with that statement as we sit here today?

> A.    100 percent.

> ***

> Q.    So you would then agree that the risk of cancer of the liver exceeds the incidence in a minor increment in populations who are not infected with hepatitis B?

> A.    Correct.

> ***

> Q.    Now, I did hear you say that you felt that it was exaggerated, but what I'm trying to figure out from you is whether you think there is any additional risk or not?

> A.    And I made it clear that no one is sure.

6

Q.     So you don't know?

A.     No one knows.

*See* Exh. K attached hereto, pp. 101, 126, 134.

16.     Notwithstanding the question of increased risk of liver cancer, however, based on MetLife's underwriting guidelines – as Dr. Zamarripa testified – had Decedent, in accordance with the Application, provided MetLife with truthful information about his hepatitis B history, MetLife would have declined to issue the Policy as it did.  *See* Zamarripa Aff., Exh. A.

For the foregoing reasons, MetLife respectfully requests that the Court grant its motion for summary judgment: (i) dismissing Plaintiff's claim for breach of contract; (ii) declaring life insurance Policy No. 204 126 416 ET void *ab initio* on the grounds that Decedent made material misrepresentations in the application; (iii) awarding MetLife costs and disbursements in this action; and (iv) awarding MetLife such other and further relief as the Court deems just and proper.

Dated: July 3, 2008                              METROPOLITAN LIFE INSURANCE
       Long Island City, NY                        COMPANY


                                        By: /s/ Tomasita Sherer (TH 6072)
                                               Alvin Pasternak
                                               Tomasita Sherer, of Counsel
                                               Attorneys for Defendant
                                               One MetLife Plaza
                                               27-01 Queens Plaza North
                                               Long Island City, NY  11101
                                               (212) 578-3102 (Tel)



To:     Eric Dinnocenzo, Esq.
        TRIEF & OLK
        Attorneys for Plaintiff
        150 East 58th Street, 34th Floor
        New York, NY  10155
        (212) 486-6060