*Exhibit Q*

## COMMONWEALTH OF MASSACHUSETTS

Suffolk, SS.                          SUPERIOR COURT DEPARTMENT
                                      OF THE TRIAL COURT
                                      CIVIL ACTION NO. 07-2190-B

|  |  |
|---|---|
| JEAN LIN,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN HANCOCK LIFE INSURANCE<br>COMPANY,<br><br>    Defendant. | **RECEIVED**<br><br>JUL – 3 2007<br><br>SUPERIOR COURT<br>DEPARTMENT OF THE TRIAL COURT<br>FOR CIVIL BUSINESS |

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. Plaintiff Jean Lin was the wife of the deceased Bang Lin, and both were citizens of the state of California.

2. Jean Lin is presently a citizen of the state of California.

3. Defendant John Hancock Life Insurance Company ("John Hancock") is a mutual company incorporated in the state of Massachusetts with its principal place of business at 200 Clarendon Street, Boston, Massachusetts.

### THE FACTS

4. On or about September 17, 2004, Bang Lin and Jean Lin made a written application to John Hancock for an insurance policy insuring the life of Bang Lin.

5.  John Hancock issued policy number 75245678 with a face value of $1,000,000 to Bang Lin on October 7, 2004, with Bang Lin as the insured and Jean Lin as the owner of the Policy.  Jean Lin was also the primary beneficiary.

6.  Payment of a claim on said Policy was to be made out of the home office of John Hancock in Boston.

7.  Said Policy was signed and issued in Boston.

8.  Said Policy was later converted into policy number ML7154505 with a face value of $1,000,000 (the "Policy").

9.  Bang Lin died on August 11, 2006 while the Policy was in effect.

10. Subsequent to Bang Lin's death, Jean Lin sought payment on the Policy from John Hancock.

11. In a letter dated February 22, 2007 sent from Boston, John Hancock declined to pay and declared the Policy void.

12. According to John Hancock, Bang Lin committed a material misrepresentation by not disclosing a history of testing and treatment for Hepatitis B.  Further, John Hancock claims it would not have issued the policy if it had been aware of Bang Lin's medical history.

13. Bang Lin had previously tested positive for the Hepatitis B e antigen.

14. The Hepatitis B e antigen is known to appear in people of Asian descent at a far higher rate than other racial and ethnic groups due to prior exposure to the Hepatitis B virus.

15. Most individuals (i.e. 95%) who are exposed to the Hepatitis B virus clear the virus and do not exhibit symptoms.

2

16. Those individuals who are exposed to Hepatitis B but do not develop the disease have normal life expectancies.

17. Bang Lin cleared the Hepatitis B virus from his system prior to submitting his Application for the Policy.

18. After clearing the virus, Bang Lin was at no increased risk for cirrhosis or a decrease in his life expectancy.

19. There was no material underwriting risk to John Hancock once Bang Lin cleared the virus.

20. Bang Lin did not make any statements that were willfully false, fraudulent or misleading.

21. John Hancock wrongfully refused and continues to refuse to pay the Plaintiff the sum due under the Policy.

22. John Hancock made an unreasonable delay in reaching its decision to refuse to pay the Plaintiff the sum due under the Policy, resulting in prejudice to the Plaintiff.

## COUNT I: BREACH OF CONTRACT

23. Plaintiffs repeat the allegations set forth in paragraphs 1 through 22.

24. John Hancock has breached its contract.

25. By reason of the foregoing, Plaintiff has been damaged in the amount of $1,000,000.00, together with interest, costs and disbursements thereon.

## COUNT II: UNFAIR OR DECEPTIVE ACTS AND PRACTICES
### (Violation of Massachusetts General Laws Chapters 93A and 176D)

26. Plaintiffs repeat the allegations set forth in paragraphs 1 through 25.

3

27. The foregoing conduct of John Hancock constitutes unfair or deceptive acts or practices in violation Chapters 93A and 176D of the Massachusetts General Laws.

28. On May 25, 2007, counsel for Plaintiff sent a demand letter to John Hancock by regular and certified mail setting forth the unfair or deceptive acts or practices that it committed in violation of Chapters 93A and 176D. John Hancock received the letter on May 30, 2007. (A true copy of that letter and proof of receipt is annexed hereto as an exhibit).

29. More than thirty (30) days have passed since John Hancock's receipt of the demand letter, but it has not rendered payment or made a reasonable settlement offer.

30. John Hancock committed unfair or deceptive acts or practices that were willful or knowing violations of section 2 of Chapter 93A and the laws and regulations promulgated thereunder, and its refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that its acts or practices violated said section two.

## DEMAND FOR RELIEF

WHEREFORE, the Plaintiff demands judgment against the Defendant as follows:

(a) on the first claim for relief, in the amount of $1,000,000.00, together with interest from August 11, 2006, costs and disbursements as provided by law;

4

(b) on the second claim for relief, in the amount of actual damages, with

double or treble damages, interest, costs and disbursements, and

attorney's fees; and

(c) for such other relief as the Court deems proper and just.

**Plaintiff demands a trial by jury as to all claims so triable.**

Dated:    New York, New York
          July 2, 2007

                                    TRIEF & OLK
                                    Attorneys for Plaintiff

                        By:         _____
                                    Ted Trief
                                    BBO# 502420
                                    Eric Dinnocenzo
                                    BBO# 650819
                                    150 East 58th Street, 34th Floor
                                    New York, New York 10155
                                    (212) 486-6060

5

TRIEF & OLK

ATTORNEYS AT LAW

150 EAST 58TH STREET

34TH FLOOR

NEW YORK, NEW YORK 10155

FACSIMILE: (212) 317-2946

E-MAIL: FIRM@TRIEFANDOLK.COM

TELEPHONE: (212) 486-6060

NEW JERSEY OFFICE

9 KANSAS STREET

HACKENSACK, NEW JERSEY 07601

(201) 343-5770

May 25, 2007

**BY FIRST CLASS MAIL AND**
**CERTIFIED MAIL – RETURN RECEIPT – No. 7006 0l00 0005 3988 4869**

John Hancock Life Insurance Company
200 Clarendon Street
Boston, MA 02117

> Re:   Life Insurance Policy number 75245678 (term conversion to policy
> number ML7154505)

Dear Sir/Madam:

  This firm represents Jean Lin, who is the beneficiary of life insurance policy number 75245678 (term conversion to policy number ML7154505) (hereinafter referred to as the "Policy"), with a face value of one-million ($1,000,000) dollars, that was issued to Bang Lin on or about October 7, 2004 by John Hancock Life Insurance Company ("John Hancock").  Under the provisions of Massachusetts General Laws, Chapter 93A, Section 9 and Chapter 176D, Section 3(9), this firm hereby makes demand for relief against John Hancock, as outlined in those statutes, due to unfair or deceptive acts it committed by refusing to pay the value of the Policy to Jean Lin.

  Bang Lin became deceased on August 11, 2006.  Shortly thereafter, his wife, Jean Lin, made a demand for payment of the Policy.  On or about February 22, 2007, John Hancock sent a letter to Ms. Lin declaring the Policy "null and void" on the grounds that Mr. Lin made material misrepresentations with respect to his medical history in his applications for the Policy dated August 26, 2004 and September 16, 2005.  (A copy of the letter is annexed hereto as Exhibit A).  More specifically, John Hancock alleges in the letter that Mr. Lin did not disclose a "significant" medical history for testing and treatment for hepatitis B.

  John Hancock committed an unfair or deceptive act by refusing to pay the Policy on the grounds that Mr. Lin made material misrepresentations, considering that in the August 26, 2004 application he stated "Aug. 2004 – Immunization Hep. A vaccine." (The August 26, 2004 application and Policy number 75245678 are annexed hereto as

John Hancock Life Insurance Company
May 25, 2007
- Page 2 -

Exhibit B). In addition, no material misrepresentations were made by Mr. Lin because, like most individuals who are exposed to the Hepatitis B virus, he cleared the virus from his system, and, in fact, did so prior to submitting his application. Thus, he did not exhibit symptoms nor did he have a decreased life expectancy. Furthermore, Mr. Lin did not make any statements to John Hancock that were willfully false, fraudulent or misleading.

John Hancock committed an unfair or deceptive act by refusing to pay the Policy to Ms. Lin considering that, contrary to its assertions, there was no material underwriting risk to it once Mr. Lin cleared the virus. It was a further violation of Chapters 93A and 176D, and other state and federal laws, for John Hancock to allege in the February 22, 2007 letter that it would not have issued the Policy had it been aware of Mr. Lin's medical history; Mr. Lin was of Asian descent, and the Hepatitis B e antigen is known to appear in people of Asian descent at a far higher rate than other racial and ethnic groups.

John Hancock also committed unfair or deceptive acts by failing to promptly investigate Ms. Lin's claim for payment of the Policy; by causing an unreasonable delay in reaching its decision to refuse to pay Ms. Lin the sum due under the Policy; and by failing to pay the value of the Policy where its liability was reasonably clear.

As a result of the unfair or deceptive acts committed by John Hancock, Ms. Lin has suffered injury or loss of money in the amount of one-million ($1,000,000.00) dollars, representing the face value of the Policy, plus interest, costs, and attorneys' fees.

Therefore, on behalf of Ms. Lin, this firm demands that John Hancock pay $1,000,000.00 plus accumulated interest from August 11, 2006 to the present in full settlement of her claim.

Chapter 93A gives you the opportunity to make a good-faith response to this letter within thirty (30) days. Your failure to do so could subject you to double or treble damages, interest, attorneys' fees, and costs.

Yours Truly,

Eric Dinnocenzo, Esq.

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**O F F I C I A L   U S E**

| | | |
|---|---|---|
| Postage | $ 1.65 | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ 6.45 | Lin/JH |

Sent To
John Hancock Life Insurance Company
Street, Apt. No.; or PO Box No. 200 Clarendon Street
City, State, ZIP+4 Boston, MA  02117

PS Form 3800, June 2002                See Reverse for Instructions

7006 0100 0005 3988 4869

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

JOHN HANCOCK LIFE INSURANCE
COMPANY
200 CLARENDON STREET
BOSTON, MA  02117

Lin/JH

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Jerry Burke*          ☐ Agent
                          ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
MAY 3 0 2007

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
(Transfer from service label)

7006 0100 0005 3988 4869

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

**EXHIBIT  A**

:BEN LIN                    FAX NO. :7146690515              Mar. 06 2007 09:35AM P1

John Hancock Life Insurance Company
Insurance products are issued by:
John Hancock Life Insurance Company
John Hancock Variable Life Insurance Company (not licensed in New York)
John Hancock Life Insurance Company (US Insurance Group)



Life Claim Services, C-5

John Hancock Place
Post Office Box 111
Boston, Massachusetts 02117

Susan Abbott, FLMI, ALHC
Sr. Claim Consultant
Phone:(617) 572-4980
Fax: (617) 572-5003
sabbott@jhancock.com

February 22, 2007

Jean Lin
38 Daisy
Irvine, CA 92618

RE: Bang Lin
        Policy No.: ML7154505, 75245678 (term conversion to policy number ML7154505)
        Claim No.: 6000021
        Issue Date: October 21, 2005, October 7, 2004

Dear Ms. Lin:

As you are aware, our insured, Bang Lin's death on August 11, 2006 is within the 2 year contestable period of the life insurance policies issued to him by John Hancock Variable Life Insurance Company on October 21, 2005 and October 7, 2004. The contestability provision contained in Policy 75245678 specifics, in part, that except any provision for disability benefit, except in case of fraud, we will not contest the validity of this policy after it has been in full force, during the insured's lifetime, for 2 years from the date of issue. The Incontestability provision of policy ML7154505 specifies, in part, this policy, except any provision for reinstatement or policy change requiring evidence of insurability, shall be incontestable after it has been in force during the lifetime of the insured, for 2 years from the date of issue, except for fraud. The Company's usual contestable investigation of the claim has now been completed and I'm writing to inform you of, and explain to you the basis of the Company's decision.

On September 17, 2004, Mr. Lin completed an application for a $1,000,000.00 term life insurance policy to insure his life. In consideration of, and in reliance upon, the accuracy, completeness and truthfulness of the information contained in the answers and explanations given by Mr. Lin in his application, the Company approved and issued policy number 75245678 bearing an issue date of October 7, 2004.

Page 2

However, in the application for policy 75245678, **Part B- Statements to Company's Medical Examiner** which was completed and signed by Mr. Lin on August 26, 2004, he was asked and provided the answers to the following questions: (emphasis added)

    **4.** Now under treatment or taking any prescription drug?

      To which Mr. Lin answered **"No"**

    **6.** Other than above, within the past 5 years:

      **b.** Had a checkup, consultation, illness, injury, surgery?

        To which Mr. Lin answered **"Yes"**, but provided incomplete, inaccurate and misleading details.

    **6.** Other than above, within the past 5 years:

      **d.** Had electrocardiogram, X-Ray, other diagnostic test?

        To which Mr. Lin answered **"No"**, but provided incomplete, inaccurate and misleading details.

The explanation of the answers giving to questions numbers **4., 6.b.,** and **6.d.** were specified as checkup with Dr. James Huang, in August of 2004 for an Immunization, hepatitis A. vaccine.

Following the conversion of policy 75245678, Mr. Lin completed an application on September 16, 2005 for a $1,000,000.00 medallion variable universal life insurance policy to insure his life. In consideration of and reliance upon, the accuracy, completeness and truthfulness of the information, answers and explanations given by Mr. Lin in his application, the Company approved and issued policy number ML7154505 bearing an issue date of October 21, 2005.

In the application for policy ML7154505 there is a **Health Questions** section which was completed and signed by Mr. Lin on September 16, 2005, he was asked and provided the answers to the following question: (emphasis added)

    **5.** As far as you know, within the last 10 years have you had or been told by a doctor that you had:

      **f.** Cirrhosis, hepatitis, ulcer, colitis, diverticulitis, ileitis, or other disease of the liver, gall bladder, pancreas stomach or intestines?

        To which Mr. Lin answered **"No"**, but provided incomplete, inaccurate and misleading details.

Page 3

Contrary to the answers provided by Mr. Lin concerning his medical history, and based upon which the Company issued these policies, in the course of our investigation the Company has discovered medical records which disclose a significant undisclosed medical history prior to the application date of September 17, 2004 for policy 75245678 and application date of September 16, 2005 for policy ML7154504.

Records from Dr. Sam Kam, 17170 Colima Rd, Suite E, Hacienda Heights, CA 91745 indicate that beginning in September of 1998 Mr. Lin was diagnosed and treated with Interferon for chronic active hepatitis B. The records show multiple consultations, treatment and tests with Dr. Kam from September 5, 1998 through September 3, 2005. On an August 7, 2004 record it was Dr. Kam's impression that Mr. Lin was Pre-cirrhotic. In conjunction with Dr. Kam's office visits Mr. Lin was seen at the Diamond Reference Laboratory, 1479 South Valley Vista Drive, Suite # 100, Diamond Bar, CA 91765 for follow up testing for the hepatitis B virus. The records show that copies of the laboratory results were sent to Mr. Lin. Also, records from the CVS Pharmacy show that Dr. Huang, 340 W. Cemral Ave # 19, Brea, CA, 92821 prescribed Prevacid for Mr. Lin. The medication dispensed five times from July 26, 2004 to May 31, 2005.

Although, insurance coverage under policy 75245678 has ended and there is no liability, had the Company been aware of Mr. Lin's medical history during the Company's underwriting process for policy 75245678 the Company would not have issued this policy, delivered the policy or accepted the initial premium. Consequently, we must consider that the conversion of policy 75345678 for the issue of policy ML7154505 would not have occurred. Furthermore, had the Company been aware of Mr. Lin's medical history during the Company's underwriting process for policy ML7154505, the Company would not have issued this policy, delivered the policy or accepted the initial premium. Thus, Mr. Lin's failure to disclose his significant medical history constitutes material misrepresentations and gives the Company grounds to rescind policy ML7154505. The Company considers this policy null and void, and will not be approving the claim for payment of the death benefit and proffers a return of all premiums paid.

The Company representative, Mik Kelly, who delivers this letter, is authorized to explain the Company's decision and assist you in executing a Release. It is understood that the Company's check in the amount of $4,866.00 represents all the premiums paid, and is accepted by you in full satisfaction of all claims and interests in policy number ML7154505

If you have any questions, I may be reached at the address listed above.

This letter is without prejudice to any of the Company's legal rights or defenses, all of which are fully reserved and none waived.

Yours truly,

Susan Abbott, FLMI, ALHC
Sr. Claim Consultant
Life Claim Services, C-5

**EXHIBIT  B**

*John Hancock*    Variable Life Insurance Company

John Hancock Place
Boston, Massachusetts 02117

**INSURED** BANG LIN

**PLAN** LEVEL BENEFIT TERM LIFE

**SUM INSURED** $1,000,000

**EXPIRY DATE** OCTOBER 7, 2064

**DATE OF ISSUE** OCTOBER 7, 2004

**POLICY NUMBER** 75 245 678

### INDIVIDUAL TERM LIFE INSURANCE

The John Hancock Variable Life Insurance Company (the "Company") agrees, subject to the conditions and provisions of this policy, to pay the Sum Insured to the Beneficiary if the Insured's death occurs before the Expiry Date while the policy is in full force, and to provide the other benefits, rights, and privileges of the policy.

Payment will be made on receipt at the Home Office of the Company in Boston, Massachusetts, of due proof of the Insured's death.

The policy, which includes any Riders which are a part of the policy on delivery, is issued in consideration of the application and the payment of the premiums.

The Policy Specifications (Section 1) and the conditions and provisions on this and following pages are part of the policy.

**10 Day Right of Examination – This policy may be returned by delivering or mailing it within 10 days after its receipt to the Company at Boston, Massachusetts, or to the agent or agency office through which it was delivered. Immediately on such delivery or mailing, the policy shall be deemed void from the beginning. Any premium paid on it will then be refunded. For persons age 60 or older, the Right to Cancel is 30 days.**

Signed for the Company at Boston, Massachusetts.

Michele G. Van Leer
President

Peter F. Scavongelli
Secretary

If this policy is in full force:

Proceeds are payable at the Insured's death prior to the Expiry Date; and

Premiums are payable during the lifetime of the Insured until the Expiry Date.

Premiums vary by Policy Year as shown in the Table of Rates (Section 2).

Premiums can be changed in accordance with the Change of Premium provision (Section 7).

**TERM LIFE INSURANCE TO AGE 95— CONVERTIBLE UNTIL THE LAST CONVERSION DATE, AS SPECIFIED IN SECTIONS 1 AND 10**

**NOT ELIGIBLE FOR DIVIDENDS**

02SIGTERM

V0102LCA

**Policy Provisions**

**Section**

1.  Policy Specifications
2.  Table of Rates
3.  Definitions
4.  Proceeds
5.  Owner, Beneficiary
6.  Premium Payments
7.  Change of Premium
8.  Grace Period
9.  Reinstatement
10.  Conversion Provision
11.  Option to Change to a New Term Policy
12.  Due Proof
13.  Reduction in Policy Class
14.  Claims of Creditors
15.  Assignment
16.  Contestability
17.  Misstatement of Age or Sex
18.  Suicide
19.  The Contract
20.  Settlement Options

2

## 1. POLICY SPECIFICATIONS

**The Owner and Beneficiary are as elected in the application subject to Section 5 of the policy.**

| | | | |
|---|---|---|---|
| **INSURED** | BANG LIN | **ISSUE AGE** | 35 |
| **POLICY CLASS** | PREFERRED NON TOBACCO, MALE | | |
| **DATE OF ISSUE** | OCTOBER 7, 2004 | **POLICY NO.** | 75 245 678 |
| **GUARANTEE PERIOD** | 10 YEARS, THROUGH OCTOBER 6, 2014 | | |
| **OPTION DATE** | OCTOBER 7, 2014 | **SUM INSURED** | $1,000,000 |
| **LAST CONVERSION DATE** | OCTOBER 7, 2014 | | |
| **EXPIRY DATE** | OCTOBER 7, 2064 | | |

SCHEDULE OF BENEFITS

| POLICY BENEFITS | COVERAGE AMOUNT | ANNUAL PREMIUM DURING GUARANTEE PERIOD ** |
|---|---|---|
| TERM LIFE INSURANCE TO AGE 95 | $1,000,000 | $430.00* |

*This is your yearly premium amount during the Guarantee Period only if you pay premiums annually. If you elect to pay more frequently, your yearly premium amount during that period will be in accordance with the table below.

**TOTAL PREMIUM**

| PAYMENT OPTIONS | ANNUALLY | SEMI-ANNUALLY | QUARTERLY | MONTHLY |
|---|---|---|---|---|
| FIRST YEAR PREMIUM | $430.00 | $220.91 | $113.36 | $38.20 |
| TOTAL YEARLY COST FOR FIRST YEAR PREMIUM | $430.00 | $441.82 | $453.44 | $458.40 |

If paid annually, a 10% discount will apply to the first annual premium for policies with face amounts under $1,000,000 and a 15% discount will apply for face amounts of $1,000,000 and above. The discount does not apply to substandard policy classes and rider premiums if applicable.

See Section 6, Premium Payments, for details regarding modal premium payments.

** Premiums during the Guarantee Period include a $90.00 annual policy fee.

3

## 2. TABLE OF RATES

**MAXIMUM ANNUAL PREMIUM AFTER GUARANTEE PERIOD*:**

| POLICY YEAR | AGE | TERM LIFE INSURANCE PREMIUM | TOTAL ANNUAL PREMIUMS |
|---|---|---|---|
| 2014 | 45 | $8,510.00 | $8,510.00 |
| 2015 | 46 | $8,660.00 | $8,660.00 |
| 2016 | 47 | $8,900.00 | $8,900.00 |
| 2017 | 48 | $9,200.00 | $9,200.00 |
| 2018 | 49 | $9,630.00 | $9,630.00 |
| 2019 | 50 | $10,160.00 | $10,160.00 |
| 2020 | 51 | $10,800.00 | $10,800.00 |
| 2021 | 52 | $11,600.00 | $11,600.00 |
| 2022 | 53 | $12,590.00 | $12,590.00 |
| 2023 | 54 | $13,800.00 | $13,800.00 |
| 2024 | 55 | $15,120.00 | $15,120.00 |
| 2025 | 56 | $16,550.00 | $16,550.00 |
| 2026 | 57 | $18,060.00 | $18,060.00 |
| 2027 | 58 | $19,720.00 | $19,720.00 |
| 2028 | 59 | $21,550.00 | $21,550.00 |
| 2029 | 60 | $23,650.00 | $23,650.00 |
| 2030 | 61 | $26,070.00 | $26,070.00 |
| 2031 | 62 | $28,890.00 | $28,890.00 |
| 2032 | 63 | $32,180.00 | $32,180.00 |
| 2033 | 64 | $35,920.00 | $35,920.00 |
| 2034 | 65 | $40,090.00 | $40,090.00 |
| 2035 | 66 | $44,460.00 | $44,460.00 |
| 2036 | 67 | $49,140.00 | $49,140.00 |
| 2037 | 68 | $54,140.00 | $54,140.00 |
| 2038 | 69 | $59,590.00 | $59,590.00 |
| 2039 | 70 | $65,800.00 | $65,800.00 |
| 2040 | 71 | $72,950.00 | $72,950.00 |
| 2041 | 72 | $81,290.00 | $81,290.00 |
| 2042 | 73 | $91,020.00 | $91,020.00 |
| 2043 | 74 | $101,990.00 | $101,990.00 |
| 2044 | 75 | $113,970.00 | $113,970.00 |
| 2045 | 76 | $126,000.00 | $126,000.00 |
| 2046 | 77 | $139,050.00 | $139,050.00 |
| 2047 | 78 | $153,010.00 | $153,010.00 |
| 2048 | 79 | $168,290.00 | $168,290.00 |
| 2049 | 80 | $185,510.00 | $185,510.00 |
| 2050 | 81 | $205,210.00 | $205,210.00 |
| 2051 | 82 | $228,080.00 | $228,080.00 |
| 2052 | 83 | $254,470.00 | $254,470.00 |

*These rates apply only to the annual payment mode. The maximum guaranteed rate for premiums paid semi-annually, quarterly, and monthly will be higher. To determine such rates, use the applicable "Maximum Annual Premium After Guarantee Period" rather than the "Annual Premium During Guarantee Period", and perform the calculation as set forth in Section 6.

## 2. TABLE OF RATES, (continued):

**MAXIMUM ANNUAL PREMIUM AFTER GUARANTEE PERIOD, (continued):**

| POLICY YEAR | AGE | TERM LIFE INSURANCE PREMIUM | TOTAL ANNUAL PREMIUMS |
|---|---|---|---|
| 2053 | 84 | $283,850.00 | $283,850.00 |
| 2054 | 85 | $315,690.00 | $315,690.00 |
| 2055 | 86 | $351,960.00 | $351,960.00 |
| 2056 | 87 | $389,520.00 | $389,520.00 |
| 2057 | 88 | $428,260.00 | $428,260.00 |
| 2058 | 89 | $468,330.00 | $468,330.00 |
| 2059 | 90 | $510,190.00 | $510,190.00 |
| 2060 | 91 | $553,640.00 | $553,640.00 |
| 2061 | 92 | $600,680.00 | $600,680.00 |
| 2062 | 93 | $653,980.00 | $653,980.00 |
| 2063 | 94 | $721,970.00 | $721,970.00 |

## 3. DEFINITIONS

**"Age"** means on any given date, the age of the person in question at his or her birthday nearest that date.

**"Application"** means the application for this policy attached to and made a part of this policy.

**"Beneficiary"** means the party(s) so named in the application, unless later changed as provided in this policy.

**"Date of Issue"** means the date shown in the Policy Specifications (Section 1). The Suicide and Contestability provisions use this date.

**"Due Proof"** means reasonable information as to the existence of a fact or condition.

**"In full force"** means that the policy has not lapsed in accordance with the Grace Period provision (Section 8).

**"Insured"** means the person whose life is insured under this policy as shown in the Policy Specifications (Section 1).

**"Policy Anniversary"** means the same day and month as the Date of Issue for each succeeding year this policy remains in full force.

**"Policy Class"** means the mortality or morbidity classifications assigned under this policy.

**"Policy Specifications"** means the pages of this policy so titled (see Section 1) which show your benefits, premium, and other information.

**"Policy Year"** means a one year period of time starting on successive policy anniversaries, with the first Policy Year starting on the Date of Issue.

**"Request"** means a request in writing on a form acceptable to us, signed by you and received by us.

**"Sum Insured"** means the amount shown in the Policy Specifications (Section 1).

**"Supplemental Application"** means a request for reinstatement of or a change to this policy.

**"We, our, ours, us"** means the Company, Boston, Massachusetts 02117.

**"Written notice"** means, unless otherwise stated, a written notice filed at our Home Office in Boston, Massachusetts.

**"You, your, yours"** means the party(s) named as Owner in the application unless later changed as provided in this policy.

P0502L

## 4. PROCEEDS – This section concerns the death benefit that is payable under this policy.

The proceeds are subject to adjustment under the Misstatement of Age or Sex provision (Section 17). The amount of proceeds as defined below is subject to all provisions of this policy.

The proceeds payable on the death of the Insured are equal to:

1.  the Sum Insured; plus
2.  any supplemental benefits and riders payable on the life of the Insured; plus
3.  any advanced premium deposits which are paid past the current payment period; less
4.  any premium needed as set forth in the Grace Period provision (Section 8).

We will pay interest on proceeds paid in one sum in the event of the Insured's death from the date of death to the date of payment. The rate will be the same as declared for Option 1, Settlement Options (Section 20).

## 5. OWNER, BENEFICIARY – This section indicates who is entitled to the death benefit under this policy.

The Owner and the Beneficiary will be as shown in the application unless you change them.

You shall have the sole and absolute power to exercise all rights and privileges without the consent of any other person unless you provide otherwise by written notice.

If the Insured dies and there is no surviving Beneficiary, you will be the Beneficiary; but if you were the Insured, your estate will be the Beneficiary.

While the Insured is alive, you may change the Owner and Beneficiary by written notice. A change will take effect when the notice is signed if we acknowledge receipt on the notice. The change will take effect whether or not you or the Insured is then alive. A change shall be subject to the rights of any assignee of record with us and subject to any payment made or other action taken by us before we acknowledged receipt.

## 6. PREMIUM PAYMENTS – This section informs you of our rules regarding payment of premiums.

You may elect to pay your premium on an annual, semi–annual, quarterly or monthly basis. You may change your mode of premium payment by making a written request to us at our Home Office. Additional premium charges are included in semi–annual, quarterly, and monthly premiums. The more often you pay, the higher your premium amount will be per year. To calculate the yearly premium that you will pay if you elect to pay semi–annually, quarterly, or monthly, do the following:

1   multiply the "Annual Premium During Guarantee Period" as shown on the Policy Specification page by the following factor associated with your selected mode of payment: .512 for semi–annual, .261 for quarterly, and .0865 for monthly; and then
2   add to that amount the following number: $.75 for semi–annual, $1.13 for quarterly, and $1.00 for monthly (resulting amount is rounded to 2 decimal places); and then
3   multiply that result by the number of payments required in a year based upon your selected payment mode.

For those years after the Guarantee Period, perform this calculation using the annual premium established for each subsequent year instead of the "Annual Premium During Guarantee Period."

Each premium is due on the first day of its interval of premium payment. For the first premium, this day is the Date of Issue. Payment of premiums shall be made either to us at our Home Office or to an agent authorized to receive the payment. Receipts will be delivered on request in exchange for premium payments. They will be valid only if signed by the President or the Secretary and countersigned by the agent shown on the receipt.

**7. CHANGE OF PREMIUM** – This section advises you that premiums are subject to change after a certain period of time.

Annual Premium during the Guarantee Period is shown in Section 1. Maximum Annual Premium after the Guarantee Period is shown in Section 2. The premium charged after the Guarantee Period is subject to change, but can never be above the respective maximums shown. Any change in premium will be made for all Insureds with the same Issue Age, sex, Sum Insured, duration, and Policy Class as the Insured, and will be based on our expectations of future experience. We will send you a notice of any premium change before it takes effect.

**8. GRACE PERIOD** – This section provides for a grace period in the event of late premium payments.

Any premium, other than the first, not paid when due may, prior to the Expiry Date as shown in Section 1, be paid within a grace period of 31 days after its due date if premiums have been paid to that date. The policy will continue in full force during that period.

If the Insured dies while the policy is in full force, we will refund or charge premiums to effect payment to the end of the policy month in which the Insured dies. We will pay any refund to you if you are not the Insured; otherwise we will pay it to the Beneficiary. We will deduct any charge from any proceeds.

**9. REINSTATEMENT** – This section allows you to restore the policy within a certain period of time if it has been cancelled due to non-payment of premium.

Reinstatement means to restore this policy to "in full force" status after it has gone into default because a premium due was not paid before the end of the grace period. The policy may be reinstated within 5 years after the due date of the first unpaid premium and before the Expiry Date as shown in Section 1.

The Reinstatement requirements are:
1. Completion of a Supplemental Application for reinstatement; and
2. Production of evidence of insurability satisfactory to us; and
3. Payment of overdue premiums on the policy as issued, with interest.

Interest at the rate of 6% on premiums compounded annually will be payable to the date of reinstatement. A reinstatement will be effective only as of the date we approve your request for reinstatement.

**10. CONVERSION PROVISION** – This section permits you, under certain conditions, to convert this policy to a John Hancock insurance policy that we make available at the time of conversion.

You can have all or part of the term insurance of this policy converted to a new John Hancock insurance policy that we make available at the time of conversion, on the life of the Insured. This type of change is called a conversion. A conversion can be made without proof of insurability. The final date for conversion of this policy is the Last Conversion Date, as shown in Section 1. The Last Conversion Date is defined as the earlier of (i) 10 years from the Date of Issue, and (ii) the number of years remaining until age 65. In no event, however, will the Last Conversion Date be less than 5 years from the Date of Issue.

The conversion may be made at any time while the policy is in full force and not later than the Last Conversion Date.

The new policy shall:
1. Insure only the life of the insured;
2. Be for a Sum Insured less than or equal to the Sum Insured of this policy;
3. Be on a John Hancock insurance policy that we make available at the time of conversion, and which is available as applied for;
4. Require no further evidence of insurability;
5. Be issued in the same Policy Class, as shown in this policy in Section 1, when available, or if not available, then in the most favorable, comparable Policy Class; and
6. Include the exceptions, exclusions, and restrictions, if any, which apply to this policy.

7

Any additional benefit provision may be issued with the new policy only with our consent and subject the conditions which we may determine, except that:

1. Any Disability Waiver of Premiums Benefit shown in Section 1 that applies to this policy ma issued if: (i) we offer the Benefit at the Issue Age and at the Date of Issue of the new policy; an evidence satisfactory to us is furnished to our Home Office that the Insured is not totally disa on the date written notice to convert this policy is signed. No such evidence will be required if policy applied for is a whole life policy with premiums payable to at least age 85.

2. Any Accidental Death Benefit that applies to this policy may be issued if we offer it at the Is Age and at the Date of Issue of the new policy.

The new policy, any Disability Waiver of Premiums Benefit, and any Accidental Death Benefit shal on forms and at rates in effect on the Date of Issue of the new policy with the Issue Age determined the Insured's birthday nearest the Date of Issue.

Either one of two dates may be elected as the Date of Issue of the new policy:

a. The Date of Issue may be the same as the Date of Issue of this policy. In this case the cost conversion will be: (i) the difference between the premiums payable for this policy and the n policy to the date of conversion, with interest at the rate of 6% per year compounded annually with adjustment for any dividend differences; or, if greater, (ii) the Policy Cash Value of the n policy at the date of conversion.

b. The Date of Issue may be the first day of the policy month during which written notice to conv this policy is filed at our Home Office. In this case payment of the initial premium under the n policy will be required.

**Policy Conversion if Insured is Disabled Before Policy Anniversary Nearest Age 60**

If premiums are being waived for this policy in accordance with any Disability Waiver of Premiur Benefit shown in Section 1 for a period which began before the policy anniversary nearest the Insure 60th birthday, this policy may be converted to a new John Hancock whole life policy. Conversion may made not later than the Last Conversion Date on written application by the Insured and Owner on o prescribed form and surrender of the policy. If no written notice is received before the Last Conversi Date and the period for which premiums are waived extends to the Last Conversion Date, this poli will terminate as of that date. It will be replaced with a new John Hancock whole life policy with tl Last Conversion Date as its Date of Issue.

The new policy shall be on the life of the Insured only. It shall be on a whole life plan with premiur payable to at least age 85, which is available as applied for and which requires no further evidence insurability according to our rules in effect on the Date of Issue of the new policy. The Date of Issue w be the first day of the policy month during which the written notice to convert this policy is filed at ou Home Office or the Last Conversion Date, whichever applies.

The new policy will be in the same Policy Class, as shown in this policy in Section 1, when available, or not available, then in the most favorable, comparable Policy Class, with;

(i) a level Sum Insured equal to the Sum Insured of this policy;

(ii) an Issue Age determined by the Insured's birthday nearest its Date of Issue;

(iii) an Accidental Death Benefit Provision if such a Benefit is shown in Section 1 and if we offer it a the Issue Age and at the Date of Issue of the new policy; and

(iv) a Disability Benefit Provision for Waiver of Premiums in Event of Total Disability.

Unless you advise us otherwise by written notice:

(1) the Owner and the Beneficiary under the new policy as of its Date of Issue shall be the same a: under this policy as of the date this policy ends; and

(2) the election of premium payment interval shall be the same as was in effect under this policy as of the date it ends.

The new policy, the Disability Benefit providing for waiver of premiums under the new policy, and the Accidental Death Benefit, if included, shall be on forms and, where applicable, at rates in effect on the Date of Issue of the new policy.

8

## Policy Conversion if Insured is Disabled On or After Policy Anniversary Nearest Age 60

If premiums are being waived for this policy in accordance with any Disability Waiver of Premiums Benefit shown in Section 1 for a period which began on or after the policy anniversary nearest the Insured's 60th birthday, and before the policy anniversary nearest the Insured's 65th birthday, the policy may be converted to a new John Hancock insurance policy. Notwithstanding anything to the contrary, conversion may be made not later than the policy anniversary nearest the Insured's 65th birthday subject to all the applicable terms and conditions of the "Policy Conversion if Insured is Disabled before Policy Anniversary Nearest Age 60" provision; except that a Disability Benefit Provision for Waiver of Premiums in Event of Total Disability will be issued with the new policy. This Provision will provide for waiver of premiums but not beyond the policy anniversary nearest the Insured's 65th birthday.

**11. OPTION TO EXCHANGE TO A NEW TERM POLICY – This section permits you to exchange this policy for another John Hancock term insurance policy under certain conditions.**

On the Option Date, as shown in Section 1, you may exchange this policy for a new John Hancock term policy. We will send a notice to you 4 months prior to the Option Date informing you of this option. On the Option Date, we will exchange this policy for a new John Hancock term policy if we receive satisfactory evidence of insurability. All premiums due on this policy must have been paid before the Option Date. The Sum Insured of the new policy must be equal to or less than the Sum Insured of this policy. The new policy is subject to the following terms:

1. You must complete and submit a new application to us not more than 120 days or less than 60 days before the Option Date.
2. We must approve the issuance of the new policy before it can become effective.
3. You must pay the first premium on the new policy in order for the new policy to become effective.
4. Coverage under this policy terminates when coverage under the new policy begins.
5. The new policy will be on a plan we make available for this option on the Option Date which provides term insurance.
6. The premiums for the new policy will be based on the Insured's age, sex, Policy Class, and our premium rates in effect for that plan, on the Option Date.
7. Any rider or benefit in this policy is subject to availability.
8. We will pay for the required evidence of insurability.

If we do not receive satisfactory evidence of insurability, then you may elect to continue this coverage in accordance with Sections 2 and 7 of the policy.

**12. DUE PROOF – This section authorizes us to obtain certain types of evidence under various circumstances.**

We may require Due Proof of:

1. the death of any person which will result in proceeds being paid, or rights being transferred, under this policy;
2. the age and sex of any person on whose life a payment is based; and
3. the continued survival of any person on whose life a payment is based.

**13. REDUCTION IN POLICY CLASS – This section offers you an opportunity to change your Policy Class, which would result in a more favorable premium schedule, if certain conditions are met.**

You may request that we reduce your Policy Class if you are eligible. We will allow a reduction in Policy Class if we receive evidence satisfactory to us that your health has improved. A reduction in Policy Class will be subject to the following conditions:

1. You will be required to pay for any evidence we may need to establish your health.
2. Any evidence we may require must be provided by a Company approved medical examiner.

A new policy will not be issued. However, new Policy Specifications (Section 1) will be provided to you.

P0902L

**14. CLAIMS OF CREDITORS – This section advises you that creditors generally do not have access to the death benefit payable under this policy.**

The proceeds and income payments under the policy will be exempt from the claims of creditors to the extent permitted by law. Such proceeds and payments may not be assigned or withdrawn before becoming payable without our agreement.

**15. ASSIGNMENT – This section authorizes you to transfer your interest in this policy to another party.**

Your interest in this policy may be assigned without the consent of any revocable Beneficiary. Your interest, any interest of the Insured, and any interest of a revocable Beneficiary shall be subject to the terms of the assignment.

We will not be on notice of any assignment unless it is in writing; nor will we be on notice until a duplicate of the original assignment has been filed at our Home Office. The assignment will be subject to payments made or actions taken by the Company before the change was recorded. We assume no responsibility for the validity or sufficiency of any assignment.

**16. CONTESTABILITY – This section authorizes us to dispute a claim for payment within a certain period of time.**

We rely on the statements made in the Application for this policy. We also rely on statements made in any Supplemental Application or request for a change of this policy. In the absence of fraud, such statements are deemed representations and not warranties. In addition to the other reasons permitted by law, we can contest the validity of: (i) this policy; (ii) any reduction in rate class; (iii) any reinstatement of this policy; or (iv) any supplemental benefit or rider added, if:

a. any material misrepresentation of fact is made in the Application, a Supplemental Application, or a request; and

b. a copy of that Application, Supplemental Application, or request is attached to this policy when issued or delivered or is later made a part of this policy.

Except any provision for a disability benefit, or except in the case of fraud, we will not contest the validity of this policy after it has been in full force, during the Insured's life, for 2 years from the Date of Issue. With respect to: (i) a reduction in rate class; (ii) any reinstatement of this policy; or (iii) any supplemental benefit or rider added, we will not contest the validity of the change or reinstatement after they have been in effect, during the Insured's life, for 2 years. However, we can always contest the validity of this policy for the non-payment of any premium due.

**17. MISSTATEMENT OF AGE OR SEX – This section addresses the effect of misstating your age or sex.**

If the age or sex of the Insured has been misstated, we will adjust the Sum Insured and every other benefit to that which the premiums paid would have purchased for the Insured's correct age or sex.

**18. SUICIDE – This section addresses the effect of suicide on the benefits payable under this policy.**

If the Insured commits suicide, while sane or insane, within 2 years from the Date of Issue, we will pay in place of all other benefits an amount equal to the premiums paid.

10

## 19. THE CONTRACT – This section describes what constitutes the entire contract between us.

The written application for the policy is attached at issue. The entire contract between the applicant and us consists of the policy, any riders and endorsements and such application. However, additional written applications for policy changes may be submitted to us after issue and such applications may become part of the policy. All statements made in the application shall, in the absence of fraud, be deemed representations and not warranties. We will use no statement made by or on behalf of the Insured to defend a claim under the policy unless it is in the written application.

Policy Years, policy months, and policy anniversaries are measured from the Date of Issue.

Any reference in this policy to a date means a calendar day ending at midnight local time at our Home Office.

Changes in this policy may be made by agreement between you and us. Only the President, a Vice President, and the Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the policy, or to extend or to make an agreement for us.

Descriptions of each section of this policy which appear immediately beside the title of each section and are set forth in boldface type have been inserted for convenience of reference only, and shall not be construed to affect the meaning, construction, or effect of the policy terms.

## 20. SETTLEMENT OPTIONS – When a death benefit becomes payable under this policy, this section addresses various payment options that we make available.

### OPTIONAL METHODS OF SETTLEMENT

In place of a single payment, an amount of $1,000 or more payable under the policy as a benefit or as the surrender value, if any, may be left with us, under the terms of a supplementary agreement. The agreement will be issued when the proceeds are applied through the choice of any one of the options below. We shall annually declare the rate of interest or amount of payment for each option.

**Option 1** – Interest Income at the declared rate but not less than 3½% a year on proceeds held on deposit. The proceeds may be paid or withdrawn in whole or in part at any time as elected.

**Option 2A** – Income of a Specified Amount, with payments each year of at least 1/12th of the proceeds, until they are paid in full. We will credit interest on unpaid balances at the declared rate but not less than 3½% a year.

**Option 2B** – Income for a Fixed Period, with each payment as declared but not less than that shown in the Table for Option 2B.

**Option 3** – Life Income with Payments for a Guaranteed Period, with each payment as declared but not less than that shown in the Table for Option 3. If the payee dies within that period, we will pay the present value of those remaining payments. We will use interest at the same rate used to determine the payments for this value.

**Option 4** – Life Income without Refund at the death of the payee of any part of the proceeds applied. The amount of each payment shall be as declared but not less than that shown in the Table for Option 4.

**Option 5** – Life Income with Cash Refund at the death of the payee of the amount, if any, equal to the proceeds applied less the sum of all income payments made. The amount of each payment shall be as declared but not less than that shown in the Table for Option 5.

You may choose an option by written notice during the lifetime of the Insured. The choice must be made before the proceeds become payable. If you have made no effective choice, the payee may make one by written notice within: (a) 6 months after the Insured's death; or (b) 2 months after the date on which the proceeds, if any, are payable in any case except death.

No choice of an option may provide for income payments of less than $50. The first payment will be payable as of the date the proceeds are applied, except that under Option 1 it will be payable at the end of the first payment interval.

The payee under an option shall be as set forth in Section 5.

No option may be chosen without our consent if the proceeds are payable: (1) in any case, except death, before the policy has been in full force on the same plan for at least 5 years; or (2) in any case to an executor, administrator, trustee, corporation, partnership, association, or assignee.

The payee may, by written notice, name and change a contingent payee to receive any final amount that would otherwise be payable to the payee's estate.

11

**Table for Settlement Options 2B, 3, 4 and 5**
**(Monthly payments for each $1000 of proceeds applied)**

| OPTION 2B Income for a Fixed Period | | Age of Payee at Birthday Nearest Date of First Payment | OPTION 3 Life Income with Guaranteed Period | | OPTION 4 Life Income without Refund | OPTION 5 Life Income with Cash Refund |
|---|---|---|---|---|---|---|
| Period of Years | Payment | | 10 Years | 20 Years | | |
| 1 | 84.46 | 40 | 3.53 | 3.50 | 3.54 | 3.46 |
| 2 | 42.86 | 41 | 3.57 | 3.54 | 3.58 | 3.50 |
| 3 | 28.99 | 42 | 3.62 | 3.58 | 3.63 | 3.54 |
| 4 | 22.06 | 43 | 3.66 | 3.62 | 3.68 | 3.58 |
| 5 | 17.91 | 44 | 3.77 | 3.66 | 3.73 | 3.62 |
| 6 | 15.14 | 45 | 3.76 | 3.71 | 3.78 | 3.66 |
| 7 | 13.16 | 46 | 3.82 | 3.75 | 3.83 | 3.71 |
| 8 | 11.68 | 47 | 3.87 | 3.80 | 3.89 | 3.75 |
| 9 | 10.53 | 48 | 3.93 | 3.85 | 3.95 | 3.80 |
| 10 | 9.61 | 49 | 3.99 | 3.90 | 4.02 | 3.85 |
| 11 | 8.86 | 50 | 4.05 | 3.95 | 4.08 | 3.91 |
| 12 | 8.24 | 51 | 4.12 | 4.01 | 4.15 | 3.96 |
| 13 | 7.71 | 52 | 4.19 | 4.06 | 4.22 | 4.02 |
| 14 | 7.26 | 53 | 4.26 | 4.12 | 4.30 | 4.08 |
| 15 | 6.87 | 54 | 4.34 | 4.18 | 4.38 | 4.15 |
| 16 | 6.53 | 55 | 4.42 | 4.24 | 4.47 | 4.21 |
| 17 | 6.23 | 56 | 4.50 | 4.31 | 4.56 | 4.28 |
| 18 | 5.96 | 57 | 4.59 | 4.37 | 4.66 | 4.36 |
| 19 | 5.73 | 58 | 4.69 | 4.44 | 4.76 | 4.44 |
| 20 | 5.51 | 59 | 4.79 | 4.50 | 4.87 | 4.52 |
| 21 | 5.32 | 60 | 4.89 | 4.57 | 4.99 | 4.60 |
| 22 | 5.15 | 61 | 5.00 | 4.64 | 5.11 | 4.69 |
| 23 | 4.99 | 62 | 5.12 | 4.71 | 5.25 | 4.78 |
| 24 | 4.84 | 63 | 5.24 | 4.77 | 5.39 | 4.88 |
| 25 | 4.71 | 64 | 5.37 | 4.84 | 5.54 | 4.99 |
| 26 | 4.59 | 65 | 5.50 | 4.91 | 5.70 | 5.09 |
| 27 | 4.47 | 66 | 5.64 | 4.97 | 5.87 | 5.21 |
| 28 | 4.37 | 67 | 5.79 | 5.03 | 6.06 | 5.33 |
| 29 | 4.27 | 68 | 5.94 | 5.09 | 6.26 | 5.46 |
| 30 | 4.18 | 69 | 6.10 | 5.14 | 6.47 | 5.59 |
| Annual, Semi-annual or quarterly payments under Option 2B are 11.839, 5.963, and 2.993 respectively times the monthly payments. | | 70 | 6.27 | 5.19 | 6.69 | 5.73 |
| | | 71 | 6.44 | 5.24 | 6.94 | 5.88 |
| | | 72 | 6.61 | 5.28 | 7.20 | 6.04 |
| | | 73 | 6.79 | 5.32 | 7.48 | 6.20 |
| | | 74 | 6.98 | 5.36 | 7.79 | 6.38 |
| | | 75 | 7.16 | 5.38 | 8.11 | 6.56 |
| | | 76 | 7.35 | 5.41 | 8.47 | 6.75 |
| | | 77 | 7.54 | 5.43 | 8.84 | 6.96 |
| | | 78 | 7.72 | 5.45 | 9.25 | 7.17 |
| | | 79 | 7.91 | 5.46 | 9.69 | 7.39 |
| | | 80 | 8.08 | 5.48 | 10.17 | 7.64 |
| | | 81 | 8.25 | 5.49 | 10.68 | 7.88 |
| | | 82 | 8.41 | 5.49 | 11.23 | 8.13 |
| | | 83 | 8.56 | 5.50 | 11.82 | 8.43 |
| | | 84 | 8.71 | 5.50 | 12.46 | 8.70 |
| | | 85 & over | 8.83 | 5.51 | 13.14 | 8.99 |
| Options 3, 4 and 5 are available only at the ages as shown. | | | | | | |

Blended 1983 Individual Annuitant Mortality Table D, Interest 3%.

 FINANCIAL SERVICES

To cancel or surrender your life insurance policy you must provide written notice to us. The notice must contain at least all of the following:

1) An unequivocal request to cancel or surrender.
2) The policy number to be canceled or surrendered.
3) The insured's name on the policy to be canceled or surrendered.
4) The policyowner's signature and, if required by the policy or by a legally binding document of which we have actual notice, the signature of a collateral assignee, irrevocable beneficiary, or other person having an interest in the policy through the legally binding document.
5) Either the policy itself, or, in lieu of the policy, a statement that the policy itself has been lost or destroyed.

CASURR97

*John Hancock.*    Variable Life Insurance Company    **AMENDMENT TO APPLICATION**

Boston, Massachusetts 02117

**Policy  75245678**

**Insured or
Proposed Insured   BANG LIN**

(In this instrument the words "Insured" and "Policy" shall be construed to mean "Annuitant" and "Annuity Contract" if appropriate.)

It is requested that the application with respect to the above-numbered policy be amended as follows:

PAGE 1  SECTION  B TO READ: JEAN LIN, WIFE, IF LIVING OTHERWISE THE INSURED' ESTATE.

PAGE 2 SECTION E PLAN OF INSURANCE TO READ: 10 YEAR LEVEL BENEFIT TERM

 **October 8, 2004**
**Agency  128**
**Agent No  194450**

**Signature**

**174R(I)VL**

9054612                J196476          Part A Statements to the Company's Agent

## A. PROPOSED INSURED

1. Name of Proposed Insured:
First  Bang                    MI
Last  Lin

2. Sex  ☒Male  ☐ Female

3. Date of Birth  8 / 6 / 69

4. Place of Birth  Taipei Taiwan
STATE          COUNTRY, IF NOT U.S.A.

5. Soc. Sec. Number  085 - 66 - 460L

6. Driver's License #. A 9644172 State: CA

7. Height  5 ft.  8 in.   8. Weight 170 lbs.

9. Occupation  Self Employed
Military Pay Grade (if applicable)

10. Address  7 Green Hollow
STREET ADDRESS
Irvine                CA    92620
CITY          STATE    ZIP

11. Home Phone ( 714 ) 734 - 9029

12. Work Phone ( 949 ) 756 - 2222

13. Best time and place for Underwriting to call (in Proposed Insured's local time zone)

14. Does the Proposed Insured smoke cigarettes or use any other tobacco product, i.e., cigars, pipes, snuff, chewing tobacco, etc.?  ☐ Yes  ☒ No
If Yes: _____
          product          frequency
If No, is the Proposed Insured a former tobacco user? ☐ Yes ☒ No
If Yes: _____
          product          date last used

## B. BENEFICIARY OF PROCEEDS PAYABLE IN THE EVENT OF THE INSURED'S DEATH

PRIMARY: Please indicate full name and relationship to the Proposed Insured.
Jean Lin        wife

CONTINGENT: Please indicate full name and relationship to the Proposed Insured.
Augustin  Chelsey Lin   50/50
Proceeds at death shall be paid as provided in the applicable benefit provisions. This right is reserved to the Owner to change the Beneficiary of any proceeds.

## C. COMPLETE THIS BOX ONLY IF OWNER IS NOT THE PROPOSED INSURED

1. Owner Name (First, MI, Last) or name of trust or corp. (if more space is needed, use Special Request box and check here ☐)
Jean  Lin

2. Soc. Sec. Number  128 - 64 - 5329
(or Tax ID Number)

3. Occupation  Parker

4. Relationship to Proposed Insured
wife

5. Date of Birth 5 / 19 / 71

6. Address  7 Green Hollow
STREET ADDRESS
Irvine           CA   92620
CITY        STATE   ZIP

7a. (If PI is under age 15) Contingent Owner name and relationship to Proposed Insured (if none, leave blank)

7b. Contingent Owner Age

## D. COMPLETE THIS BOX ONLY IF SPOUSE, APPLICANT OWNER, OR CHILDREN'S RIDERS DESIRED

1. Please give the following information for all (other than Proposed Insured) being proposed for insurance, or Applicant Owner if Applicant Waiver is applied for. If Children's Insurance is applied for, give names of Proposed Insured's children, adopted children, and stepchildren under age 15. If any child under age 15 is omitted, give name and explain why in Box S on Page 5.

| First Name | MI | Last Name | D.O.B. | Height (ft./in.) | Weight (lbs.) | Relationship to Proposed Insured | Present Total Life Insurance |
|---|---|---|---|---|---|---|---|
| | | | / / | | | | |
| | | | / / | | | | |
| | | | / / | | | | |
| | | | / / | | | | |

2a. Spouse's Driver's License No. _____ State _____ Military Pay Grade (if applicable) ___

2b. Spouse's Soc. Sec. Number _____ - _____ - _____   3. Spouse's Occupation _____

4. Does the Spouse smoke cigarettes or use any other tobacco product, i.e., cigars, pipes, snuff, chewing tobacco, etc.?
☐ Yes ☐ No  If Yes, product and frequency? _____ Product _____ Frequency
If No, is the Spouse a former tobacco user? ☐ Yes ☐ No
If Yes: product and date last used: _____

5. Spouse's Place of Birth: State _____ Country, if not USA: _____

RECEIVED
SEP 2 0 2004
THE HEARTLAND AGENCY
IOWA #128

Page 1

*Part A Statements to the Company's Agent*

## PLEASE COMPLETE THIS PAGE IF **TRADITIONAL** or **TERM** IS DESIRED

### E. PLAN

☐ Modified Premium Whole Life

☐ Level Premium Whole Life

☑ 10/15/(20)/25/30 (circle one) Year Level Premium Term

☐ Indeterminate Premium Yearly Renewable Term: Level

☐ Indeterminate Premium Yearly Renewable Term: Decreasing

Interest Rate _____%;   Term _____ years

☐ Other (specify) _____

### F. SUM INSURED

$ 1,000,000

### G. PAYMENT DETAILS

1. Premium billing interval

☑ Annual     ☐ Semiannual

☐ Quarterly     ☐ Monthly (automatic deduction)

☐ Employee Consultation (Case # _____)

☐ Other

2. Do you elect to have overdue premiums automatically paid, if and when applicable and available, by:

a. Dividend values?     ☐ Yes   ☐ No

b. Policy value loan?     ☐ Yes   ☐ No

### H: DIVIDEND OPTION ELECTION (Whole Life only. If AIP Rider is elected in Box I below, do not choose a dividend option.)

*Select one of the 15 options in this box for Whole Life only. THESE OPTIONS ARE NOT AVAILABLE IF AIP RIDER IS ELECTED - ONLY OPTIONS "V" OR "LV" ARE AVAILABLE AND MUST BE SELECTED IN BOX I BELOW.*

☐ A.   Taken in cash

☐ B.   Applied to premium

☐ C.   Left on deposit

☐ D.   Buy paid-up insurance

☐ LA.   Levelize premium, balance in cash

☐ LC.   Levelize premium, balance left on deposit

☐ LD.   Levelize premium, balance to buy paid-up insurance

☐ LI.   Levelize premium, balance to repay loan and then buy paid-up insurance

☐ BC.   Applied to premium, balance left on deposit

☐ BD.   Applied to premium, balance to buy paid-up insurance

☐ BI.   Applied to premium, balance to repay loan and then buy paid-up insurance

☐ EA.   Buy one-year term, balance in cash

☐ EB.   Buy one-year term, balance to reduce premium

☐ EC.   Buy one-year term, balance left on deposit

☐ ED.   Buy one-year term, balance to buy paid-up insurance

### I. RIDERS ON PROPOSED INSURED

☐ Accidental Death Benefit $ _____

☐ YRT Level Death Benefit $ _____

☐ YRT Decreasing Death Benefit $ _____

Interest Rate _____%;   Term _____ years

☐ Additional Insurance Protection (AIP)

Premium $ _____   Face amount $ _____

Optional Lump Sum $ _____

☐ AIP Levelized Premium Option

☐ AIP Cost Recovery Option: _____ years, _____ %

☐ AIP Increase Option: _____ years, _____ %

Dividend Option Election for AIP rider: (choose one)

☐ V. Funds AIP Rider

☐ LV. Levelize premium, balance to fund AIP Rider

☐ Paid-Up Insurance (PUI)

☐ Lump Sum Payment (Option 1) $ _____

☐ Level Annual Premium (Option 2)

$ _____ per year for _____ years

☐ Modified fill-in premium for 5 years (Option 3)

☐ Living Care Benefit (Accelerated Death Benefit)

☐ Disability Waiver of Premiums

☐ Insurance of Insurability, Purchase Limit $ _____

☐ Other Available Riders (please specify) _____

_____

_____

### J. RIDERS ON OTHER THAN PROPOSED INSURED

*(Please be sure info on any person proposed for insurance is on Page 1, Box D.)*

☐ Children's Insurance $ _____

☐ YRT Level on Spouse $ _____

☐ YRT Decreasing on Spouse $ _____

Interest Rate _____%.   Term _____ years

☐ Applicant's Disability Waiver of Premiums

☐ Other Available Riders (please specify) _____

_____

_____

_____

*Part A Statements to the Company's Agent*

## M. UNDERWRITING INFORMATION ("Any person" means any person being proposed for insurance on this Part A.)

| | | |
|---|---|---|
| 1. Has any person done in the past three years, or intend to do any: | | |
|     a. flying except as a passenger on regularly scheduled airlines? | | |
|       (If yes, please complete aviation questionnaire.) | ☐ Yes | ☒ No |
|     b. skin/scuba diving, parachuting, motorized racing, or other hazardous sports? | | |
|       (If yes, please complete avocation questionnaire.) | ☐ Yes | ☒ No |
| 2. In the past five years, has any person been convicted of reckless driving or driving under the influence or had a driving license suspended or revoked? | ☐ Yes | ☒ No |
| 3. In the past three years has any person been convicted of two or more motor vehicle moving violations? | ☐ Yes | ☒ No |
| 4. In the past 10 years has any person been convicted of or incarcerated for the violation of any criminal law (unless later acquitted), are any criminal charges now pending against any person, or is any person currently on probation? | ☐ Yes | ☒ No |
| 5. Does any person intend to reside or travel outside the U.S. or Canada? | ☐ Yes | ☒ No |

If any of questions 2-5 are answered "yes", please explain: _____

_____

## N. OTHER INSURANCE / REPLACEMENT INFORMATION

1. Give information indicated as to all insurance in force on any person proposed for insurance, including term riders.

| Company | Issue Year | Plan | Amount | ADB Amount | Business Insurance? |
|---|---|---|---|---|---|
| Met Life | 1998 | | 500,000 | | ☐ Yes ☒ No |
| | | | | | ☐ Yes ☐ No |
| | | | | | ☐ Yes ☐ No |
| | | | | | ☐ Yes ☐ No |
| | | | | | ☐ Yes ☐ No |

2. Is any other insurance application now pending or contemplated on the life of any person proposed for insurance?    ☒ Yes  ☐ No
   If yes, which person(s)? _____ Insured
   What company(ies)/amounts? _____ WRL

3a. Is the insurance applied for intended to replace or change any life insurance or annuity now in force on any person proposed for insurance?
   (If yes, give writing company of insurance being replaced, policy number, and insurance amount.)  ☐ Yes  ☒ No

| Company | Policy # | Amount | Company | Policy # | Amount |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

3b. Check this box if this case is a 1035 exchange. ☐ *(Please refer to inside front cover for 1035 Exchange Guidelines.)*

4. Is Disability Insurance with Provident or Long Term Care Insurance with the Company currently being applied for?
   ☒ No  ☐ Yes, DI (Date of application _____ )☐ Yes, LTC (Date of application _____ )

5. Has any application for life, disability, or health insurance on any person being proposed for insurance ever been declined, postponed, or modified?
   (If "Yes", give most recent company, including John Hancock.)   COMPANY    APPROXIMATE DATE  ☐ Yes  ☒ No

## O. PLEASE COMPLETE THIS BOX ONLY IF ADVANCE PAYMENT IS BEING MADE

1. How much advance payment is included with this Part A? $ _____
   (Write check to John Hancock Life or John Hancock Variable Life, as appropriate. 1035 external replacements may not be prepaid.)

Page 4

*Part B Statements to the Company's Agent*

## COMPLETE FOR NON-MEDICAL APPLICATIONS ONLY

Please give full details below for every "Yes" answer to Questions 1-6 below as to each person proposed for insurance, who is referred to below as "any person". Be sure to include the names/addresses of any treatment providers.

| | | | |
|---|---|---|---|
| 1. | Has any person ever been treated for or had any known indication of disease of the heart or blood vessels, chest pain or high blood pressure, hypertension, stroke, paralysis, diabetes, tumor, cancer, convulsions, kidney disease, high cholesterol, gastro-intestinal disease, mental or psychiatric disorder, lung or respiratory disease, or blood disorder (excluding HIV)? | ☐ Yes | ☑ No |
| 2. | Has any person had or ever been diagnosed or treated by a physician or other medical practitioner for Human Immunodeficiency Virus or Acquired Immune Deficiency Syndrome (AIDS)? | ☐ Yes | ☑ No |
| 3. | Has any person ever received counseling or treatment regarding the use of alcohol, drugs, illegal drugs, or used any illegal drug or controlled substance? | ☐ Yes | ☑ No |
| 4. | Other than indicated above, within the past 5 years has any person | | |
| | a) been admitted to a hospital or other medical or rehabilitation facility? | ☐ Yes | ☑ No |
| | b) consulted or been treated by a physician, or had a medical exam or checkup? | ☐ Yes | ☑ No |
| 5. | Has either parent of any person died as a result of coronary artery disease or cancer before the age of 60? | ☐ Yes | ☑ No |
| 6. | Has any sibling or any person suffered from coronary artery disease? | ☐ Yes | ☑ No |
| 7. | Is any person currently taking any prescription drug? | ☐ Yes | ☑ No |

If yes, which person? _____

What drug? How frequently? _____

8. If any person has a personal physician, please enter name, address, and details below. Otherwise leave blank.

_____
FIRST NAME                          MI                          LAST NAME

_____
STREET ADDRESS            CITY                          STATE          ZIP CODE

Date last seen: _____    Reason(s) last seen: _____

---

**Details to "yes" questions.**

| | |
|---|---|
| Question No. _____ | Question No. _____ |
| Name of person _____ | Name of person _____ |
| Condition _____ | Condition _____ |
| Date of onset _____ Last occurrence _____ | Date of onset _____ Last occurrence _____ |
| Treatment/medication, if any _____ | Treatment/medication, if any _____ |
| Names/addresses of physicians/hospitals providing treatment | Names/addresses of physicians/hospitals providing treatment |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| Question No. _____ | Question No. _____ |
| Name of person _____ | Name of person _____ |
| Condition _____ | Condition _____ |
| Date of onset _____ Last occurrence _____ | Date of onset _____ Last occurrence _____ |
| Treatment/medication, if any _____ | Treatment/medication, if any _____ |
| Names/addresses of physicians/hospitals providing treatment | Names/addresses of physicians/hospitals providing treatment |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

Please record any additional details on a separate piece of paper.

Page 6 CA

*Statements to the Company's Agent*

## AGREEMENT AND SIGNATURES

A. The statements and answers on pages 1 through 6 of Part A and Part B of the attached application are, to the best of my knowledge and belief, complete, true, and correctly recorded. All statements and answers are representations and not warranties, and with all Parts B of the attached application will form the basis for and be a part of any new policy or additional benefit provision issued on this application.

B. Coverage will take effect as provided in and subject to the terms and conditions of Conditional Temporary Insurance Agreement Form 156-COMBTIA-99 bearing the same date and number of this Part A if: (1) an advance payment of at least the Minimum Temporary Insurance Premium is made with this Part A which satisfies the requirements of such Conditional Temporary Insurance Agreement; and (2) the amount applied for in this and all other applications now pending in John Hancock Life Insurance Company and the John Hancock Variable Life Insurance Company does not exceed $1,000,000 life insurance.

C. If the applicant has a right to have the new policy issued as requested without completing any Part B, the new policy will take effect as of its Date of Issue, provided the initial payment has been received with this application.

D. In cases other than those described in B and C above, any new policy or benefit provision will take effect as of the Date of Issue of the policy, but: (1) only on delivery to and receipt by the Applicant of the policy and payment of the minimum initial premium thereon and (2) only if at the time of such delivery and payment each person proposed for insurance in Parts A and B of this application is living and has not consulted or been examined or treated by a physician or practitioner since the latest Part B pertaining to such person was completed.

E. No agent or medical examiner is authorized to make or discharge policies or waive or change any of the conditions or provisions of any application, policy, or receipt, or to accept risks or pass on insurability. Any such unauthorized action is not notice to or knowledge of the Company. A medical examiner is not an agent of the Company.

### Provisions F and G apply only to variable products

F. All benefits, payments, and values, including the Death Benefit and Account Value, under any policy issued which is based upon the investment experience of a separate investment account may increase or decrease in accordance with the investment experience of the separate investment account and are not guaranteed as to fixed dollar amount. The Account Value may even decrease to zero.

G. A prospectus for the policy applied for has been given to the Proposed Insured and/or to the Applicant.

### Provisions H, I, J, K, and L apply if the policy applied for is a term conversion or purchase option.

H. The new policy will be a new, separate contract. If the new policy is issued in exchange for the original insurance, all liability of the Company under the original insurance will cease when the new policy takes effect. Until the new policy is issued, coverage will still be in force under the original policy. Coverage under the new policy will take effect as indicated in Paragraph C above.

I. The application for the original insurance, unless such insurance is now incontestable, and the application for each additional benefit provision which is to be retained as specified on page 2 of this Application, unless such provision is now incontestable, will also form a basis for and be a part of the new policy.

J. If the original policy or benefit provision is being exchanged and is subject to an assignment, the new policy will be subject to the same assignment unless it is discharged or, in the case of a policy loan assignment, unless the indebtedness has been repaid.

K. If the new policy is issued in exchange for the original policy, any nonforfeiture option election applicable to the original policy will be applicable to the new policy, if available, unless otherwise requested in writing.

L. Ownership and control of any policy issued on the attached application will be determined by the terms of the new policy.

All statements and answers in this application are representations and not warranties and to the best of my knowledge and belief, are true and complete. I certify under the penalty of perjury that the Owner's Taxpayer Identification Number on page one is correct and complete. I assent to this application.

| | |
|---|---|
| X _____ | _____ |
| Signature of Proposed Insured, if other than Applicant and age 15 or over | Applicant's Signature |
| X _____ | _____ |
| Signature of Proposed Insured's Spouse, if proposed for insurance | Witness (Agent must witness where required by law) |
| X _____ | Irvine          CA |
| Policyowner, Assignee, or Irrevocable Beneficiary (Signature required only for exchange of policy or benefit provisions) | City or Town          State |
| | on  9 / 17 / 04 |
| | Date |

# *Application for Life Insurance*

This application is to:   ❏ John Hancock Life Insurance Company or
                          ❏ John Hancock Variable Life Insurance Company
                            which will sometimes hereinafter be referred to as "the Company" and "John Hancock".

**Instructions:**

1. Please print all answers legibly in black ink.
2. Please complete only one "Page 2", depending on the plan applied for.
3. Any change or deletion must be initialed by the Proposed Insured or Applicant.
4. Part B must be completed on all people proposed for coverage unless they are to be medically examined.

| Please indicate type of case, complete the necessary section, and enter/send application where indicated. | | |
|---|---|---|
| **Type of Application** | **Complete These Sections** | **Enter/Send Application** |
| ❏ **New Life Insurance Policy**<br><br>Replacement<br><br>Pension Trust | Part A<br>Part B *(if Nonmedical application)*<br>Agreement and Signatures<br>Authorization<br>Page 8<br>Pages 9-13 *(if applicable)* | Enter case into ELUS<br>(Date entered: ___/___/___)<br><br>Send to Underwriting |
| ❏ **Term Conversion**<br>(of John Hancock term policies<br>and riders) | Part A (except Questions 4, 7, and 9 of Box A,<br>Box M, and Questions 1, 2, 4, and 5 of Box N)<br>Part B *(if excess amount / riders applied for)*<br>Agreement and Signatures<br>Authorization *(if excess amounts / riders<br>applied for)*<br>Page 10<br>Pages 9-13 *(if applicable)* | Enter case into ELUS<br>(Date entered: ___/___/___)<br><br>Send to Underwriting |
| ❏ **Rider Addition**<br>(to existing policy)<br><br>**Increases in Amount**<br>(FlexV, MVL Plus, MVL Edge, UL)<br><br>**Option Change 1 to 2**<br>(FlexV, MVL Plus, MVL Edge, UL) | Part A (Boxes A, D, I, J, M, N, O, and S only)<br>Part B<br>Agreement and Signatures<br>Authorization<br>Page 5<br>Pages 10-13 *(if applicable)*<br>Use Boxes I and J on Page 2 | Send to Underwriting |
| ❏ **Change in Rating** | Part A (Box A and S only)<br>Part B<br>Agreement and Signatures<br>Authorization<br>Sales Credit | Send to Underwriting |
| ❏ **Contractual Changes**<br>(e.g., Exchange of Existing Policy, Plan<br>Changes, Amount Reductions)<br><br>**Option Change 2 to 1**<br>(FlexV, MVL Plus, MVL Edge, UL) | Part A (Box S only)<br>Part B *(if changing to Lower Premium Plan)*<br>Agreement and Signatures<br>Authorization *(if underwriting required)*<br>Sales Credit | Send to Coverage Changes |

John Hancock Life Insurance Company

Application to:                                              or                                              Part B–STATEMENTS TO COMPANY'S MEDICAL EXAMINER

John Hancock Variable Life Insurance Company

The questions and answers in 1-10 and Details of "Yes" answers apply to the following person proposed for insurance

1. a. Person proposed for insurance: (PRINT)
   *Bang* _____ *Lin*
   First Name      Middle Initial      Last Name

   b. Birth Date (mm/dd/yy) __08__ / __06__ / __1969__
   SSI __085__ , __66__ , __4606__

| 2. Ever been treated for or had any known indication of: | Yes | No |
|---|---|---|
| a. Disorder of eyes, ears, nose, or throat? | ☐ | ☒ |
| b. Dizziness, fainting, convulsions, headache; speech defect, paralysis or stroke; mental or nervous disorder? | ☐ | ☒ |
| c. Shortness of breath, persistent hoarseness or cough, blood spitting; bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? | ☐ | ☒ |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? | ☐ | ☒ |
| e. Jaundice, intestinal bleeding, ulcer, hernia, appendicitis, colitis, diverticulitis, hemorrhoids, recurrent indigestion, or other disorder of the stomach, intestines, liver or gallbladder? | ☐ | ☒ |
| f. Sugar, albumin, blood or pus in urine, venereal disease; stone or other disorder of kidney, bladder, prostate, reproductive organs or breasts? | ☐ | ☒ |
| g. Diabetes; thyroid or other endocrine disorders? | ☐ | ☒ |
| h. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of muscles or bones, including spine, back, or joints? | ☐ | ☒ |
| i. Deformity, lameness or amputation? | ☐ | ☒ |
| j. Disorder of skin, lymph glands, cyst, tumor, or cancer? | ☐ | ☒ |
| k. Allergies, anemia or other disorder of the blood? | ☐ | ☒ |
| l. Alcoholism, Drug Dependence? | ☐ | ☒ |

| 3. Within the past 5 years used amphetamines, cocaine, marijuana, narcotics, or any other drugs, except as medication prescribed by a physician? | ☐ | ☒ |
|---|---|---|
| 4. Now under treatment or taking any prescription drug? | ☐ | ☒ |
| 5. Any change in weight in the past year? | ☐ | ☒ |
| Gain ........ lbs.      Loss ........ lbs. | | |

| 6. Other than above, within the past 5 years: | | |
|---|---|---|
| a. Had any mental or physical disorder not listed above? | ☐ | ☒ |
| b. Had a checkup, consultation, illness, injury, surgery? | ☒ | ☐ |
| c. Been a patient in a hospital, clinic, sanatorium, or other medical facility? | ☐ | ☒ |
| d. Had electrocardiogram, X-ray, other diagnostic test? | ☐ | ☒ |
| e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☒ |

| 7. Ever: | | |
|---|---|---|
| a. Had military service deferment, rejection or discharge because of a physical or mental condition? | ☐ | ☒ |
| b. Requested or received a pension, benefits, or payment because of any injury, sickness or disability? | ☐ | ☒ |

DETAILS of "Yes" answers. (IDENTIFY QUESTION NUMBER, CIRCLE APPLICABLE ITEMS: Include diagnoses, dates, duration and names and addresses of all attending physicians and medical facilities.)

6b. *James Huang, MD*

*340 W. Central Ave. #119*

*Brea, CA 92821*

*(714) 990-0375*

*Aug. 2004 – Immunization*

*Hep A. Vaccine.*

| | Yes | No |
|---|---|---|
| 8. Have you ever been diagnosed or treated for Acquired Immune Deficiency (AIDS) or an AIDS Related Condition? | ☐ | ☒ |

9. a. Name and address of your personal physician:
   (If none, so state)
   Name *James Huang, MD*
   Address *340 W. Central Ave. #119, Brea, CA 9281*

| b. In past 5 years have you consulted your personal physician for any matter not recorded in answers to questions 2-8? If "Yes", furnish reason, details and date in "Details" space above. | ☐ | ☒ |
|---|---|---|

| 10. Any family history of diabetes, cancer, high blood pressure or cholesterol, heart or kidney disease, or mental illness? | ☐ | ☒ |
|---|---|---|

| | Age if Living | Cause of Death | Age At Death |
|---|---|---|---|
| Father | 72 | | |
| Mother | 69 | | |
| Brothers and Sisters No. Living _4_ No. Dead _0_ | 32 → 45 | | |

The foregoing statements and answers are to the best of my knowledge and belief, complete, true, and correctly recorded and are representations and not warranties.

Dated at __Irving__  __CA__  on __8-26__ 20 __04__
                City or Town                    State

Witness __Rona Kuo, RN__

Medical Examiner

Signature of person proposed for insurance, if age 15 or over, or Applicant, if person proposed is under age 15.

Form 157 Combo-90

INSTRUCTIONS TO THE MEDICAL EXAMINER

1. The Medical Examiner must complete this form in his own handwriting.  Please use black ink.
2. Read all questions carefully to the person who is to be examined if Age 15 or over, otherwise the Applicant.
3. All medical examinations, even those partially completed, must be forwarded to the Agency.  THEY ARE NOT TO BE GIVEN TO THE AGENT UNDER ANY CIRCUMSTANCES.
4. Fees for examinations will be paid from the Home Office only.  NO FEE IS TO BE ACCEPTED FROM AN AGENT OR ANY OTHER PERSON.

| Examiner's Account No. | | MEDICAL EXAMINER'S VOUCHER<br>To assure prompt payment of your fee this voucher should be fully completed.<br>("Items to be completed by Examiner) | | | | | | Amt.<br>Of Fee | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Amt.<br>Of Ins. | 1,000,000 |
| Agency Name  *Heartland* | Agency Number  12-8 | Date of Exam | | | Birthdate Examined | | | L/B Code | LDB |
| | | | | | | | | Reported By | |
| Name of Person Examined (Please Print)  *Bang Lin*<br>Please Print or Type | | Mo. | Day | Yr. | Mo. | Day | Yr. | | |
| Pay to Name  ExamOne # 328 | | 08 | 26 | 04 | 08 | 06 | 69 | | |
| Street Address  14322 Ramona Blvd. | | Voucher No. | | | | | | | |
| City or Town  Baldwin Park          State  C A   Zip Code 91706 | | | | | | | | Date | |

TO BE COMPLETED IN EVERY CASE.                    Date  Aug 26 20 04
AUTHORIZATION

I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person that has any records or knowledge regarding the undersigned to give to the John Hancock Life Insurance Company or its reinsurer(s) any such information, including information concerning every condition for which such person has been under observation or treatment, the history obtained, physical and laboratory findings, diagnosis and treatment.

A photostat of this authorization is as valid as the original.

-----------------------------------------------------
Name of person proposed for insurance if under age 15 (PRINT)

Signature of person proposed for insurance, if age 15 or over,
or Applicant, if person proposed for insurance is under age 15.