Lin v. MetLife

07 civ. 3218

# EXHIBIT N

## Collins, Eileen

| | |
|---|---|
| **From:** | Eustice, Robert |
| **Sent:** | Wednesday, September 29, 2004 4:23 PM |
| **To:** | Collins, Eileen |
| **Cc:** | Brown, Lynette M. |
| **Subject:** | FW: Bang Lin Case |
| **Importance:** | High |



Eileen,

I received your "final answer" on this case. The Rep said that the client would like the results of your findings released to him, because he is unaware of any conditions that would cause the decision. What do you need from here & please copy Lynette? The client wanted to know if he could do the exam & fluid tests again in case they did a bad test or something? Does he have that right & would those results be reconsidered? Please advise. Thanks for your reconsideration & help on this case.

Bob

-----Original Message-----
**From:** Johnson Leung [mailto:jleung7526@yahoo.com]
**Sent:** Tuesday, September 28, 2004 4:46 PM
**To:** Eustice, Robert
**Subject:** Re: Bang Lin Case

I need super...

> ----- Original Message -----
> **From:** Eustice, Robert
> **To:** 'jleung7526@yahoo.com'
> **Cc:** Brown, Lynette M.
> **Sent:** Tuesday, September 28, 2004 11:49 AM
> **Subject:** Bang Lin Case
>
> Johnson, we appealed to the UW on this case for you and they would only move one class - to preferred ns at $730/yr vs the $570 for spns that you had hoped for. I've attached the new quote. Please advise if the client will accept. This is their final offer. Remember the discount is in year one only, so the cost drops $109.50 to $620.50 and then goes back to $730 in subsequent years. Let me know if you want us to issue this case asap. Thanks.
>
> <<Lin-Bang.pdf>>
>
> Bob Eustice, CLU, ChFC
> John Hancock Financial Services
> Brokerage Mgr. - Agency 128
> (888) 793-1872, ext. 324#
> (515) 223-7777, ext. 324#
> (515) 223-5470 - fax

JEAN LIN

VERSUS

JOHN HANCOCK LIFE INSURANCE COMPANY

TRANSCRIPT AND WORD INDEX OF DEPOSITION OF:

EILEEN COLLINS

January 28, 2008

*Leavitt Reporting, Inc.*
*1207 Commercial Street Rear*
*Weymouth, MA 02189*
*Telephone (781) 335-6791*
*Fax (781) 335-7911*
*leavittreporting@verizon.net*

69

1  A. Yes.
2  MR. TRIEF: Mark this as Exhibit
3  No. 12, please, a letter from Robert Eustice to
4  Eileen Collins regards the Bang Lin case.
5  (Exhibit No. 12 marked for
6  identification.)
7  Q. Did you receive this series of e-mails,
8  Exhibit No. 12?
9  A. Yes.
10  Q. These e-mails occur after you offered the
11  preferred rate, correct?
12  A. I believe so, yes.
13  Q. Were you aware that the client had offered
14  to redo the exam and fluid tests again?
15  A. Yes.
16  Q. And you chose not to have it done, correct?
17  A. Correct.
18  Q. If the client was offering to redo the exam
19  and fluid tests, why did you decline that if you were
20  concerned at all?
21  A. We just don't retest. It's just something
22  that we don't do.
23  Q. Were you aware that the client was unaware

70

1  of any conditions that would have caused him not to
2  get a good rate?
3  A. Yes.
4  Q. So as far as you were concerned, there were
5  no intentional misrepresentations of the client that
6  you could tell, correct?
7  MR. ROONEY: Objection to the form of
8  the question.
9  MR. TRIEF: You can answer.
10  A. Correct.
11  Q. Doesn't how the agent asks questions and if
12  the agent asks questions affect intentional
13  misrepresentation?
14  A. I mean he should be asking the way the
15  application reads.
16  Q. I understand. You would want him to do
17  that?
18  A. Yes.
19  Q. That wasn't the question. Doesn't the way
20  an agent asks the questions and whether he asks the
21  questions affect intentional misrepresentation?
22  A. I guess it could.
23  Q. Did you ever respond to the agent's request

71

1  that Mr. Lin be retested and you would reconsider the
2  results upon retesting, did you ever respond to him?
3  A. I don't know.
4  Q. Did you look through e-mails with respect to
5  this case?
6  A. I don't know if there was any e-mail after
7  this one or not.
8  MR. TRIEF: Mark this as Exhibit
9  No. 13, please.
10  (Exhibit No. 13 marked for
11  identification.)
12  Q. Look at Exhibit No. 13. Is that the
13  response?
14  A. Yes.
15  Q. You declined in that response to allow him
16  to be retested, correct?
17  A. Yes.
18  Q. You indicated that he was getting an
19  exception as it is, correct?
20  A. Yes.
21  Q. Again you refer to elevation in labs in the
22  plural. Are you referring to one thing or more than
23  one thing?

72

1  A. I believe I was only concerned with the
2  cholesterol HDL.
3  Q. Again the bilirubin was no consideration for
4  you at all?
5  A. No.
6  Q. So you had in this particular case an Asian
7  gentleman who had elevated bilirubins and was getting
8  hepatitis A vaccine and there was no concern that you
9  had about that?
10  A. No, I thought it was a minor elevation.
11  MR. TRIEF: Mark this as Exhibit
12  No. 14, please.
13  (Exhibit No. 14 marked for
14  identification.)
15  Q. Did you have occasion to review the schedule
16  on the 30 (b)(6) notice?
17  A. Did I?
18  Q. Yes.
19  A. No.
20  MR. TRIEF: Is she produced as a 30
21  (b)(6) witness?
22  MR. ROONEY: No, she was individually
23  identified as the deponent as well.