UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------

JEAN LIN,

       Plaintiff,

  - against -

METROPOLITAN LIFE INSURANCE
COMPANY,

       Defendant.

------------------------------------------

1:07-cv-03218-RJH

**MEMORANDUM OPINION AND ORDER**

Richard J. Holwell, District Judge:

  This case involves a $1 million life insurance policy issued by defendant Metropolitan Life Insurance Company ("MetLife") to Bang Lin. When Mr. Lin applied for the policy, he neglected to disclose that he had been diagnosed with, and treated for, Hepatitis B. After he passed away from an unrelated cause, MetLife discovered the discrepancy and rescinded the policy. The policy's beneficiary, plaintiff Jean Lin, sued. MetLife's principal defense is that rescission was proper, because Mr. Lin's treatment history was material to its underwriting decision.

  On March 30, 2009, the Court issued a memorandum opinion and order finding that MetLife was entitled to summary judgment. *Lin v. Metro. Life Ins. Co.*, No. 1:07-cv-03218-RJH, 2009 WL 806572 (S.D.N.Y. Mar. 30, 2009). With respect to the materiality of Mr. Lin's undisclosed treatment history, the Court explained that "[i]f the question . . . was whether a reasonable insurer would have offered a policy to Mr. Lin on the same terms as the policy that MetLife ultimately issued, . . . materiality . . . would be a close question, particularly at summary judgment." *Id.* at *10. Nevertheless, the Court continued to find Mr. Lin's omission material, for two reasons. First, the record showed

- 1 -

that Mr. Lin's treatment history would have had a substantial effect on MetLife's underwriting process had it been disclosed. *Id.* And second, MetLife specifically inquired whether Mr. Lin had been treated for Hepatitis. *Id.* at *11. Under California law, such an inquiry "in itself [is] usually sufficient to establish materiality." *Thompson v. Occidental Life Ins. Co.*, 513 P.2d 353, 360 (Cal. 1973).

In its decision, the Court took judicial notice of certain medical background information about Hepatitis B. *See Lin*, 2009 WL 806572, at *1-2 & n.2. To allow the parties an opportunity to object, *see* Fed. R. Evid. 201(e), the Court stayed entry of judgment. *Id.* at *11. Shortly thereafter, plaintiff filed an objection to one of the facts noticed and moved the Court to reconsider several aspects of its decision. The motion will be denied.

## DISCUSSION

Under Local Civil Rule 6.3, reconsideration is appropriate if the Court overlooked controlling decisions which, had they been considered, might reasonably have altered the result of the underlying decision. *E.g.*, *Levine v. AtriCure, Inc.*, 594 F. Supp. 2d 471, 474 (S.D.N.Y. 2009). At the same time, "[a] motion for reconsideration 'is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved.'" *Finkelstein v. Mardkha*, 518 F. Supp. 2d 609, 611 (S.D.N.Y. 2007).

In a diversity case such as this one, "the law to be applied . . . is the law of the state." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "[W]hether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern." *Id.* Thus, "[i]n ascertaining the substantive law of the

forum," the Court "look[s] to the decisional law of the forum state, as well as to the state's constitution and statutes." *Travelers Ins. Co. v. 633 Third Associates*, 14 F.3d 114, 119 (2d Cir. 1994). *See Roginsky v. Richardson-Merrell, Inc.*, 378 F.2d 832, 851 (2d Cir. 1967) (Friendly, J.) ("[W]hen a federal court must determine state law, it should not slavishly follow lower or even upper court decisions but ought to consider all the data the highest court of the state would use.").

*Proof of Materiality Under California Law*

Plaintiff contends that the Court applied the wrong legal standard in determining that Mr. Lin's treatment history was material to MetLife's underwriting decision. Generally, information is material if it is "[o]f such a nature that knowledge of [it] would affect a person's decision-making process." *Black's Law Dictionary* 991 (7th ed. 1999) (def. 3). The Court held that under California law, an undisclosed fact is material to an insurance contract if it would have had a substantial effect on the insurer's underwriting decision. *Lin*, 2009 WL 806572, at *10. This standard was satisfied because MetLife's underwriter approved Mr. Lin's policy based on the false assumption that there were no "flags" in Mr. Lin's medical history, and a relevant underwriting guideline called for additional analysis where a proposed insured had elevated bilirubin levels as a result of a known cause. *Id.* Thus, the Court found that if MetLife had known of Mr. Lin's treatment history, "it would have demanded more information from Mr. Lin and engaged in a substantially different underwriting process." *Id.*

Plaintiff does not challenge the factual premises underlying this conclusion, but contends that something more is required to establish materiality under California law. Specifically, plaintiff contends an omission is not material unless, had the insurer known

- 3 -

the true facts, it would not have issued the policy, or would only have issued the policy on different terms. (Lin Mem. 12; Lin Reply Mem. 7).

In the Court's view, this interpretation of California law is too cramped. As the Court noted in its prior opinion, the California Insurance Code provides that "[m]ateriality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." Cal. Ins. Code. § 334 (West 2005). Through its reference to "inquiries," the Code expressly contemplates that an insurer can establish the materiality of an omission by showing that it would have made substantially different inquiries had it known the true facts. *See Lin*, 2009 WL 806572, at *6, 10.

Plaintiff notes that California courts have held in a number of cases that a misrepresentation or omission was not material because the insurer would have issued a policy on the same terms even if it knew the true facts. *See Holz Rubber Co., Inc. v. Am. Star Ins. Co.*, 533 P.2d 1055, 1064-1065 (Cal. 1975); *Thompson*, 513 P.2d at 362; *Ransom v. Penn Mut. Life Ins. Co.*, 274 P.2d 633, 636-37 (Cal. 1954). Plaintiff errs, however, in assuming that these cases decided the issue raised here. In each case, the issue raised by the record was whether the policy would have issued on the same terms. *See Holz*, 533 P.2d at 1065 (insured's failure to disclose stock in warehouse without sprinkler immaterial because unreported stock not covered by policy); *Thompson*, 513 P.2d at 362 (insured's failure to disclose prior medical history immaterial because trial court could have concluded, as alternate ground for decision, that history related to "'minor indispositions' rather than serious aliments" [*sic*], and "subject matter of the . . .

consultations would not have affected [insurer's] decision to issue a policy"); *Ransom*, P.2d at 637 (insured's failure to disclose high blood pressure, treatment for chest pain, and prior electrocardiogram immaterial because evidence showed that "there was nothing seriously wrong with his physical condition"). Yet as the Code provides, materiality also may be determined by "the probable and reasonable influence of the facts upon the party to whom the communication is due, . . . *in making his inquiries*." Cal. Ins. Code § 334 (emphasis added). *See generally* 6 Lee R. Russ & Thomas F. Segalia, *Couch on Insurance* § 82:16, at 82-31 (3d ed. 2005) ("The materiality of a representation is determined not by the actual influence it exerted upon the insurer, but by the possibility of its so doing."); 39 Cal. Jur. 3d *Insurance Contracts* § 183 (2009) ("[A] representation is material, for instance, if it might influence the insurer in accepting or rejecting the risk, in forming its estimate of the disadvantages of the proposed insurance or in making its inquiries in regard thereto, or in determining the rate of premium.").

Perhaps the best example of these alternate grounds for establishing materiality is *Burns v. Prudential Insurance Co. of America*, 201 Cal. App. 2d 868 (1962).[1] There, the insured failed to disclose that he had been treated for shortness of breath, chest pains, and a rapid pulse. *See id.* at 870. The insurer's underwriter testified that if he had known about this history, he would have ordered a "special heart report" and an electrocardiogram, and referred the insured's file to the insurer's medical department for

---

[1] In its March 30 opinion, the Court cited *Freeman v. Allstate Life Insurance Co.*, 253 F.3d 533 (9th Cir. 2001), to illustrate this same point. *See Lin*, 2009 WL 806572, at *10. Plaintiff accurately notes that the Court over-read *Freeman*, because "[t]he district judge believed the testimony of Allstate's operations manager . . . that Allstate would not have issued the policy had it known about [the insured's] epilepsy." *Freeman*, 253 F.3d at 535-36; *see* Lin Mem. 12. The Court acknowledges the error, which, for the reasons explained in the text, does not effect the outcome.

interpretation and recommendation. *Id.* at 872. In addition, the insurer's medical director testified that "a standard policy would have been refused and a substandard policy might have been offered in the discretion of the underwriter." *Id.* The court held that the insured's failure to disclose his medical history was independently sufficient to establish materiality: "Both of plaintiff's experts agreed with defendant that to determine the physical condition of a person it is necessary to know the truth about his medical history. The misrepresentation in these respects is sufficient to support a rescission of the policy." *Id.* at 873.

*Burns* is applicable and instructive. The decision expressly considered the question raised by the record—whether an insurer can demonstrate the materiality of undisclosed medical information by pointing to the effect it would have had on its underwriting process. Its analysis gives effect to each term in the controlling statutory language, as required by generally applicable principles of statutory interpretation. *See Reno v. Baird*, 957 P.2d 1333, 1344 (Cal. 1998); *Bolton v. MacDonald*, 794 P.2d 911, 916 (Cal. 1990); *City and County of San Francisco v. Farrell*, 648 P.2d 935, 938 (Cal. 1982). And, while it is an older decision, *Burns* remains good law. In *Thompson*, the California Supreme Court relied on the *Burns* decision repeatedly. *See Thompson*, 513 P.2d at 360, 367.

Plaintiff suggests that *Security Life Insurance Co. of America v. Meyling*, 146 F.3d 1184 (9th Cir. 1998), establishes that "a misrepresentation in an insurance application is only material when an insurer is misled into accepting the risk or in fixing the amount of the premium." (Lin Mem. 10.) There, the Ninth Circuit considered the standard for materiality as a question of federal common law. The court approvingly

noted the rule that a misrepresentation is not material where the insurer concedes, or the evidence shows, that a policy would have issued on the same terms had the insurer known the true facts.  *See id.* at 1191.  Yet the court also appears to have contemplated that an insurer may establish materiality by showing how truthful disclosure might have affected its decisionmaking process.  The court said, paraphrasing *Holz*, that "materiality is determined by the misrepresentation's effect on the insurer's informed acceptance of risk, i.e., would knowledge of the true facts have *influenced the insurer in deciding whether to accept the risk* or in assessing how much premium should be paid for undertaking the risk."  *Id.* at 1192 (emphasis added).  And it summarized its holding as follows: "when an insurer does not claim it altered its conduct in reliance on the misrepresentation and cannot demonstrate net economic consequences, it has not established materiality."  *Id.* at 1193.  Clearly, this holding says nothing about what happens when an insurer *does* claim to have altered its conduct in reliance on a misrepresentation.  Thus, even if *Meyling* had interpreted and applied California law (it did not, *id.* at 1191), it does not support the argument that Mr. Lin's concealment was immaterial.

Plaintiff offers yet another argument: that under the materiality standard the Court applied, "the insurer will almost always prevail by claiming it would have carried out different procedures if the misrepresentation or omission in the application had been known to it." (Lin Reply Mem. 7 n.3.)  But the prediction is too dire.  The Court found, based on undisputed record evidence, that Mr. Lin's treatment history would have had a "substantial effect on MetLife's decisionmaking process."  *Lin*, 2009 WL 806572, at *10.  Just as the concept of materiality distinguishes between major and minor ailments,

*e.g.*, *Ransom*, 274 P.2d at 637, so it distinguishes between significant and insignificant effects on an insurer's decisionmaking process.

For these reasons, the Court finds that it correctly applied California law in concluding that Mr. Lin's failure to disclose his treatment history was material and declines to reconsider this aspect of its decision.

*The Relevance of Specific Questions About Hepatitis on MetLife's Application Form*

The Court found in the alternative that Mr. Lin's medical history was material because MetLife's application forms specifically inquired whether he had been treated for Hepatitis. *See Lin* 2009 WL 806572, at *10-11. Plaintiff contends that this was error, because a specific question is "usually"— not *always*—"sufficient to establish materiality as a matter of law." *Thompson*, 513 P.2d 360 (emphasis added); *see* Lin Reply Mem. 7-8.

The Court addressed this point in its prior opinion by relying on *Burns*' synthesis of California law. *See Lin* 2009 WL 806572, at *11. The court in *Burns* noted that "[i]n a number of cases courts have held that where the insurer demands written answers to specific questions, the answers given are deemed material as a matter of law." *Burns*, 201 Cal. App. 2d at 871. In other cases, "the materiality of the false answers has been treated as a question of fact, even though the matters to be answered in writing were 'deemed material.'" *Id.* These cases could be reconciled by examining "the nature of the information withheld and what the evidence shows as to the practice of the insurance company when confronted with an application containing a truthful disclosure of the fact which was involved." *Id.* at 872. "Where the insurance company concedes or the

- 8 -

evidence shows that the company would not have been influenced by full and truthful answers, the falsity of the application has been held not to justify rescission." *Id.*

Under this analysis, the Court's application of the "specific question" doctrine was appropriate. MetLife did not concede that Mr. Lin's omissions were immaterial. And if Mr. Lin had provided full and truthful answers, MetLife would have rated his application "for cause" rather than relying on a guideline that allowed elevated bilirubin levels without any adverse effect. *See Lin* 2009 WL 806572, at *10. Thus, the Court declines to reconsider this aspect of its decision.

*Plaintiff's Remaining Objections*

Plaintiff's three remaining objections only merit a brief response.

1.  Plaintiff contends the Court should not have taken judicial notice that a recent review article reported that a man who acquires the Hepatitis B virus from his mother around the time of his birth faces up to a forty percent lifetime risk of death from liver disease. *See Lin*, 2009 WL 806572, at *2 (citing Jules L. Dienstag, *Hepatitis B Virus Infection*, 359 New Eng. J. Med. 1486 (Oct. 2008).) The Court simply noted this fact to lend context to its later discussion, particularly by showing how reasonable observers in the medical community view Hepatitis B. As the Court did not note the article for the truth of the matter asserted, there is no need to consider whether it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiff's objection is overruled.

2.  Plaintiff argues that the Court erred in excluding the affidavit of a retired FBI agent named Michael Henehan. Mr. Henehan averred that a medical examiner named Peggy Chou did not have an independent recollection of helping Mr. Lin fill out the

second part of his insurance application form.  Plaintiff contends that the affidavit is admissible insofar as it contains an admission by Ms. Chou that she has no independent recollection of filling out the form.  (Lin Mem. 14-15.)

Under the relevant Federal Rules of Evidence, a statement is admissible as an admission if it is offered against a party and is "the party's own statement" or "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."  Fed. R. Evid. 801(d)(2)(A), (D).  Ms. Chou was not employed by MetLife, and plaintiff has not proffered any evidence that she was MetLife's agent or employee.  (Generally, "[a]n agency relationship is based upon consent by one person that another shall act in his behalf and be subject to his control."  *Elfstrom v. N.Y. Life Ins. Co.*, 432 P.2d 731, 738 (Cal. 1967).)  The suggestion that the Henehan affidavit contains a non-hearsay admission is without merit.

3.  Lastly, plaintiff contends that the Court erred in relying on two affidavits submitted by Ms. Chou, because the affidavits contradict one another, and Ms. Chou is an interested witness.  (Lin Mem. 15-16.)  There is no inconsistency in the affidavits.  In her original affidavit, Ms. Chou averred that she recalled asking Mr. Lin all the questions on Part II of his insurance application and that Mr. Lin answered "No" to questions 5, 7, 8(a), and 8(b).  (Chou Aff. ¶¶ 4-12, Apr. 21, 2008.)  In her supplemental affidavit, Ms. Chou conceded that she did not remember Mr. Lin's face or address.  (*See* Chou Supp. Aff. ¶ 3, Aug. 13, 2008.)  She emphasized, however, that she "always read[s] each of the interview questions to the proposed insured and write[s] down the answers," and that she stands behind the statements in the original affidavit.  (*Id.* at ¶ 6.)

Plaintiff is correct to note that Ms. Chou has not been subject to cross-examination and may have a remote interest in the outcome of the litigation insofar as MetLife is a regular customer of her client, Portamedic. (Lin. Mem. 12.) But plaintiff had the opportunity to depose Ms. Chou and failed to do so. Thus, there is little force to plaintiff's objection that the record is one-sided.

\* \* \*

Plaintiff's motion for reconsideration [38] is denied. The Clerk is directed to close this case.

SO ORDERED.

Dated: New York, New York
~~January~~ Feb. 24, 2010

Richard J. Holwell
United States District Judge